**LEXINGTON INVESTMENT COMPANY, MBW Management, Inc., MBW Venture Partners Limited Partnership, Venture Capital Management II Limited, McCarthy, Bund, Weersing & Co. Limited Partnership, Michigan Investment Fund, L.P., Philip E. McCarthy, Michael J. Nash, Wayne L. Clevenger and Ian R.N. Bund, Plaintiffs,**

v.

**SOUTHWEST STAINLESS, INC., Sam Brown and Mike Stanwood, Defendants.**

**No. 87 Civ. 5092.**

United States District Court, S.D. New York.

Sept. 1, 1988.

Morrison & Foerster, O'Sullivan Graev & Karabell, New York City, for plaintiffs; Charles E. Bachman, of counsel.

Jacob D. Fuchsberg Law Firm, New York City, for defendants; George J. Malinsky, of counsel.

## AMENDED OPINION

IRVING BEN COOPER, District Judge.

Defendants Southwest Stainless, Inc. (hereinafter "Southwest"), Sam Brown and Mike Stanwood move for an order pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure dismissing the complaint on the ground of improper venue. Defendants also request attorneys fees and costs of this motion. Plaintiffs oppose the motion in its entirety.

## STATEMENT OF FACTS

The underlying dispute in this action stems from plaintiffs attempted acquisition of Southwest from defendants Brown and Stanwood. On November 4, 1986 plaintiff Lexington Investment and defendants Brown and Stanwood entered into a Letter of Intent (hereinafter "LOI"). The LOI set forth the contemplated terms and conditions of the transaction and forthcoming agreement. During the following one and one-half months, negotiations between defendants and certain plaintiffs ensued; consequently, they engaged in face-to-face negotiations in New York commencing on December 27, 1986 and continuing around-the-clock until approximately 3:00 A.M., December 31, 1986. Notwithstanding these efforts, the negotiations were terminated and plaintiffs did not purchase Southwest.

On June 24, 1987 defendants sent each plaintiff a letter alleging that each had engaged in fraud, breach of contract and violations of the Texas Deceptive Trade Practice Act (DTPA). Therein defendants claimed they had suffered damages well in excess of $4.5 million as a result of plaintiffs' actions and advised plaintiffs that they intended to take legal action if they received no response to their demand for payment within thirty days.

## PROCEDURAL HISTORY

On July 17, 1987 plaintiffs filed a complaint in the Southern District of New York for a declaratory judgment seeking a determination of disputed legal relations and a resolution of controversies arising out of the claims set forth by defendants in their June 24, 1987 correspondence to plaintiffs. Defendants moved to dismiss for improper venue pursuant to Fed.R.Civ.P. 12(b)(3) contending that the forum-selection clause contained within the LOI specifically provided that any dispute arising under the LOI shall be maintained as to venue in Fort Bend County, Texas, and 2) that the claims set forth in the complaint did not arise within the Southern District of New York. The sole issue before us is whether venue is proper.

## DISCUSSION

In the instant case, subject matter jurisdiction is founded solely upon diversity of citizenship. 28 U.S.C. §§ 1332 and 2201. Such an action may, "except as otherwise

provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." 28 U.S.C. § 1391(a). No party to this action is a resident of New York.

Defendants contend venue is improper because the LOI signed by the parties on November 4, 1986 expressly provides (in paragraph 25) that "[t]his LOI shall be governed by and construed under the laws of the State of Texas and any dispute arising under the LOI, the Agreement or the Purchase shall be maintained as to venue in Fort Bend County, Texas."

Plaintiffs maintain that this clause cannot be enforced by this Court because another provision contained within paragraph 23 of the LOI expressly states: "[i]t is understood that this LOI sets forth the preliminary understanding in principle and the present intentions of the parties to enter into an agreement providing for the above understandings upon terms and conditions mutually acceptable to the parties and their counsel. Except for paragraphs 10, 11, 17, and 22 above, this LOI shall not be construed as a binding contract."

It is well-settled that parties to a contract may agree in advance to submit to the jurisdiction of a given court. Nevertheless, before this Court shall enforce the forum selection clause contained within the LOI signed by the parties, we must first determine whether this clause is valid in light of the non-binding clause.

A letter of intent is customarily employed to reduce to writing a preliminary understanding between parties. *Dunhill Securities Corp. v. Microthermal Applications, Inc.*, 308 F.Supp. 195, 196 (S.D.N.Y. 1969). "[T]he fact that the parties contemplated that an integrated memorial of their agreement would be executed is not conclusive of their intent not to be bound until after execution, but it does constitute some evidence thereof ... [T]he crucial question is whether the parties intended not to be bound, or whether either of them manifested an intent to the other not to be bound, until a fully integrated contract had been executed ... This, ultimately the decision here depends upon an issue of fact."

*Banking & Trading Corporation, Ltd. v. Floete*, 257 F.2d 765, 769 (2d Cir.1958). In the instant case, while the LOI may not necessarily constitute a binding contract to ultimately purchase Southwest, it is evident from the contents of the LOI that it is in essence a contract to negotiate in good faith.

Despite the argument set forth by defendants it is unnecessary for this Court to proceed with an analysis of whether the numerous discussions by telephone or the 3–4 day face-to-face negotiations between the parties created an implied contract under the *Floete* rationale. Although defendants focus on *Floete* and *Texaco v. Pennzoil*, 729 S.W.2d 768 (Tex.App.—Houston [1st Dist.] 1987) analyses in support of their position that the acts subsequent to the execution of the LOI constitute a binding contract to purchase Southwest, this argument is not relevant to the sole issue before this Court. We must determine *where* the dispute is to be heard, not whether a binding implied contract was subsequently created during the negotiation process.

Before turning to an interpretation of the LOI, we note our obligation under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) to apply the substantive law of Texas. Under New York conflict of law rules, the traditional rule for purposes of construing the meaning of words or validity of provisions in a contract is governed by the law of the place where the contract is made. This rule has evolved to applying the local law of that state which has greatest interest in or most significant relationship to the transaction and parties. *Index Fund, Inc. v. Insurance Co. of North America*, 580 F.2d 1158, 1162 (2d Cir.1978), *cert. den.*, 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979); *Schering Corp. v. Home Ins. Co.*, 544 F.Supp. 613, 618 (E.D.N.Y.1982), *reversed on other grounds*, 712 F.2d 4 (2d Cir.1983).

Whether we resort to the traditional view or employ the more recent approach, the outcome is the same. The LOI specifically reads, "AGREED TO AND ACCEPTED this 4th day of November, 1986 *in Fort*

*Bend County, Texas."* Therefore, under the traditional rule, the law of Texas would be applied since the contract was entered into in Texas. Under the more recent approach, we would also be compelled to apply the law of the State of Texas, since we find that Texas has the greatest interest in and the most significant relationship to the transaction and the parties. Specifically, we note that Southwest, the company being sold, is a Texas corporation with its principal office and business there. All shareholders, officers, and directors are residents of Texas. The contemplated purchase agreement envisioned a newly-formed Texas corporation which would be maintained and conducted in Texas. Furthermore, we re-emphasize that none of the parties to this action are residents of New York. The only contract of any significance to this State is the fact that the parties conducted here negotiations during a 3–4 day face-to-face. This one-time New York personal contact is only a small part of an elaborate phase of negotiations. Upon examination of the relevant and pertinent factors we are persuaded that Texas law should be applied in determining the validity and construction of the LOI.

Texas law requires that a writing be construed in its entirety, and the court must consider each part of the writing with every other part. *Deauville Corp. v. Federated Dept. Stores, Inc.,* 756 F.2d 1183, 1183 (5th Cir.1985). Thus, all relevant provisions of a writing should be considered in determining its intent and meaning. *Channel 20, Inc. v. World Wide Tower Services,* 596 F.Supp. 928, 930 (S.D.Texas 1984) "The intention of the parties is crucial." *Dunhill, supra* at 198. Therefore, we must determine whether it was the intent of plaintiff Wayne L. Clevenger, the President of Lexington Investment Co., and defendants Sam Brown and Mike Stanwood as selling shareholders to resolve disputes arising under the LOI in Fort Bend County, Texas.

At first blush, the intent of the parties is unclear because paragraphs 23 and 25 of the LOI are in direct conflict with one another. The language of paragraph 23 explicitly provides: "It is understood that this LOI sets forth the preliminary understandings in principle and the present intentions of the parties to enter into an Agreement providing for the *above* understandings upon terms and conditions mutually acceptable to the parties and their counsel. Except for 10, 11, 17, and 22 *above,* this LOI shall not be construed as a binding contract." [emphasis added.] The non-binding clause is contained in paragraph 23 and specifically states the intentions of the parties in regard to paragraphs one through twenty two. The forum selection clause, however, is contained within paragraph 25, which appears *below* paragraph 23. Thus, it is reasonable to conclude that the parties specifically intended to exclude the forum selection clause from the operation of paragraph 23—that it be read independently.

Moreover, the parties expressly agree in paragraph 25 that any dispute arising under the LOI will be venued in Fort Bend County, Texas. The purpose of the LOI was to ensure that the parties involved would exercise their best efforts in the negotiation and sale of Southwest. Each party contends the other did not use its best efforts and in fact proceeded in an unlawful manner. Thus, the dispute between the parties does arise under the LOI and satisfies the condition precedent of the forum selection clause.

In construing this LOI from its four corners we must abide by the tenets of contract construction and seek to harmonize and give effect to all provisions so that none would be rendered meaningless. *Chapman v. Orange Rice Mill. Co.,* 747 F.2d 981 (5th Cir.1984). We must presume that the parties intended every clause to have some effect, and we must attempt to reconcile these two conflicting provisions unless they are either irreconcilable or necessarily repugnant. *Id.*

It is well-established that if any ambiguity arises so as to create two or more reasonable constructions of a writing, it is to be construed against the drafting party. *Channel 20 Inc., supra* at 930. In the case at bar the letter of intent was drafted

by plaintiffs and thus any ambiguities must be construed in favor of defendants.

Based upon the foregoing, it is evident that the forum selection clause is valid notwithstanding the non-binding aspect of paragraphs 1 through 9, 12 through 16, and 18 through 21. To construe otherwise would not comport with general principles of contract construction. Notwithstanding our finding that the forum selection clause is valid, we must still determine whether under the circumstances we should enforce such a forum selection clause.

■ It is well-settled that forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable or unjust under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). This approach is in accord with basic concepts of freedom of contract. Factors considered by the *Bremen* court as to "reasonableness" include whether the choice of the forum was made in an arm's length negotiation by experienced and sophisticated businessmen and no fraud or overreaching was present, and whether the forum clause was a vital part of the agreement so as to make it realistic to believe that the parties conducted their negotiations with the consequence of the forum clause made a factor in their negotiations. *Id.* at 12–14, 92 S.Ct. at 1914–15.

The forum selection clause in the LOI is not in fine print or hidden in a mass of unrelated verbiage. We note that the forum selection clause was not included in the draft LOI prepared by plaintiff, but was included in the final version of the LOI which was ultimately signed by both parties. A copy of the drafted LOI is annexed as Exhibit 2 to defendants motion to dismiss. (Defendants' Motion to Dismiss, sworn to October 16, 1987). Handwritten markings and additions appear on this draft. Significantly, the forum selection clause was handwritten on the draft, evidencing that this provision was part of the bargaining process. Moreover, we take note of the fact that it was *plaintiffs* who prepared and typed the final version of the LOI incorporating almost verbatim the handwritten forum clause. Furthermore, both parties in this action are sophisticated business persons; and here plaintiffs were attempting to make a $4.5 million purchase.

It must be borne in mind that if the party seeking to avoid enforcement can clearly show that enforcement would be unjust, the forum clause will not be enforced. *Bremen* at 15, 92 S.Ct. at 1916. "[I]t is incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Full Sight Contact Lens v. Soft Lenses, Inc.*, 466 F.Supp. 71, 73 (S.D.N.Y. 1978). In the instant case, plaintiffs have failed to show any grave inconvenience which might result from a trial in Texas.

Plaintiffs maintain that the pivotal issues in this case have an exclusive nexus to New York and will require the testimony of witnesses located in New York and New Jersey. Plaintiffs are proceeding under the mistaken assumption that the 3–4 day face-to-face negotiation is the sole foundation of this lawsuit. Plaintiffs have attempted to rely upon this erroneous theory to convince us that "the claim arose" in New York pursuant to 28 U.S.C. § 1391(a). We do not agree. The Court must consider the totality of the circumstances, including dealings in Texas as well as interstate negotiations. Moreover, defendants claim that their major witnesses are in Texas where many of the documents necessary for litigation are also located.

In light of all the relevant and vital factors herein presented, this Court finds the alleged inconvenience to plaintiffs insufficient to overcome the venue clause for which they bargained. To allow plaintiffs to deny the enforceability of the forum selection clause would be to contravene the basic principles underlying contract law. We see no sound basis for concluding that it would be unfair, unjust or unreasonable to hold plaintiffs to their bargain.

We must also take into consideration the fact that a forum selection clause which would otherwise be reasonable under the

circumstances may be held unenforceable if to hold otherwise would contravene a strong public policy of the forum in which suit is brought. *Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916. Here, the LOI provides that it is governed by the laws of the State of Texas, a state that disfavors forum selection clauses and deems them unenforceable; thereby manifesting a public policy against them. However, our Circuit Court has held that in cases such as this where there is an express contract provision directing the application of state law which disfavors forum selection clauses, the choice-of-law provision should not be applied. In *Bense v. Interstate Battery System of America, Inc.*, 683 F.2d 718, 722 (2d Cir.1982), the court stressed that the interpretation of the choice-of-law provision under Texas law regarding venue could not have been the intentions of the parties. Such an interpretation would render the forum selection clause meaningless, and would thus frustrate the intent of the parties as clearly set forth in the LOI.

Accordingly, we find the forum selection clause both valid and enforceable and could therefore dismiss this action. However, in the interest of saving the plaintiff the effort and expense of bringing a new action in Texas, as well as the possibility of contending with statute of limitations problems (the underlying claims appear to involve both contract and intentional tort actions), we hereby transfer this action pursuant to 28 U.S.C. § 1406(a) to the United States District Court for the Southern District of Texas, a district where the action should have been brought initially. *See, Full–Sight Contact Lens*, 466 F.Supp. at 74–75.

### CONCLUSION

We hereby direct the Clerk of this Court to transfer this action in accordance with the above decision. Defendants' request for attorneys fees and the costs of this motion is denied.

SO ORDERED.