**Lurrlean PRYOR, Plaintiff,**

v.

**The CITY OF NEW YORK, Police Officer Fahy, Police Officer Valveri, Police Officers John Doe # 1–12, Defendants.**

**No. 88 CV 3714.**

United States District Court,
E.D. New York.

Jan. 27, 1989.

Alan D. Levine, New York City, for plaintiff.

Corporation Counsel, New York City (Peter L. Zimroth, Jonathan L. Pines, Alan M. Schlesinger, of counsel), for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendants move pursuant to Fed.R.Civ. P. 12(b)(6) for an order dismissing the Complaint on the ground that they are entitled to qualified immunity for the actions of which plaintiff complains. For the reasons set forth below, the motion is granted.

## FACTS

The Complaint brought pursuant to 42 U.S.C. § 1983 alleges the following facts:

In June 1986, plaintiff rented the first floor rooms of her two-family dwelling to Robin and Adrian Pressley ("the Tenants"). In September 1986, plaintiff determined that she no longer wished to lease the rooms to the Tenants, and asked the Tenants to vacate the premises. The Tenants refused to vacate. On or about November 3, 1986, plaintiff had a locksmith change the first floor locks thereby denying access to the Tenants. Both plaintiff and the Tenants contacted the police to make their respective complaints. Two police officers later appeared at the residence. The officers instructed plaintiff to provide the Tenants with the keys to the first floor premises. When plaintiff refused, the two officers placed her under arrest and transported her to the 113th Precinct. She was later charged in a summons returnable January 30, 1987 with unlawful eviction. Plaintiff then surrendered the first floor keys to the Tenants. The Tenants then changed the first floor locks, thereby denying access to plaintiff.

On November 21, 1986 a Temporary Order of Protection was issued by the Criminal Court of the City of New York for the benefit of the Tenants. On November 27, 1986, plaintiff, responding to an unspecified emergency, entered the first floor of the residence. Upon the complaint of the Tenants, plaintiff was arrested for violating the Order of Protection. On December 16, 1986, the charge against plaintiff was dismissed upon a motion by the District Attorney.

On January 6, 1987, at approximately 10:00 a.m., plaintiff commenced hold-over proceedings against the Tenants, by causing a Notice and Petition to be served upon them. About four hours later, the second floor lessee notified plaintiff of a strong odor of gas in the premises. Plaintiff called the police and locksmith. The locksmith arrived at the premises first and (rather than open the lock), broke a window, entered the first floor and discovered that all the gas jets of the stove had been turned on and that the pilot light of the stove had been turned off. Officers Fahy and Valveri subsequently arrived. Officer Fahy instructed plaintiff not to permit the Tenants to reenter the premises. Plaintiff thereupon had the locksmith change the first floor locks. Neither officer filed a report of this incident. Later that evening, plaintiff was arrested by other New York City police officers for unlawful eviction. After spending the evening in jail, the charges were dropped, again upon the motion of the District Attorney.

On January 13, 1987, six police officers assisted the Tenants in vacating the premises by helping the Tenants carry boxes. Plaintiff complained to the officers that valuable items of her personal property were missing and acts of vandalism had been done to the apartment. The officers refused to take plaintiff's complaint and refused to search the Tenants' boxes. On January 30, 1987, the November 3, 1986 summons was dismissed and sealed.

Plaintiff commenced this action on the ground that defendants' actions in causing her to be falsely summoned, arrested and imprisoned without probable cause deprived her of due process guaranteed by the fourth and fourteenth amendments. Plaintiff also alleges that defendants conspired with the Tenants in causing said

deprivation. Plaintiffs second, third and fourth claims allege false arrest and imprisonment, malicious prosecution and negligence.

Defendants' motion seeks to dismiss the Complaint on the ground that the officers are entitled to qualified immunity for the actions of which plaintiff complains.

## DISCUSSION

### I. The Doctrine of Qualified Immunity

"[A] government official performing discretionary functions is protected from personal liability to the extent that his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.[1] Thus, only if the law was 'clearly established' at the time of the purported offense will the immunity defense fail, 'since a reasonably competent public official should know the law governing his conduct.' *Id.* at 818–19, 102 S.Ct. at 2738–39." *Musso v. Hourigan*, 836 F.2d 736, 741–42 (2d Cir. 1988).

Qualified immunity can be established in at least three ways. First, where "it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution." *Robison v. Via*, 821 F.2d 913, 920 (2d Cir.1987). Second, "even if the interest asserted by the plaintiff was clearly of a type generally protected by federal law, the defendant is entitled to immunity ... if it was not clear at the time of the acts at issue that an exception did not permit those acts." *Id.* at 921. Third, even if the defendant cannot establish either of the above tests, he may be entitled to qualified immunity "if it was objectively reasonable for him to believe that his acts did not violate those rights." *Id.*

### A. False Arrests

■ As the Complaint alleges, plaintiff was arrested twice for unlawful eviction, once on November 3, 1986 and again on January 6, 1987. Section 26–521 of the New York City Administrative Code [2] provides that it is unlawful for any person to evict, or attempt to evict, an occupant of a rented residency by changing the lock on the entrance door without supplying the lessee with a key. The allegations of the Complaint admit that plaintiff violated § 26–521. There is no charge, nor any argument in her opposition papers, that defendants arrested plaintiff in the absence of probable cause to believe that she violated a New York City law prohibiting the method of eviction that plaintiff attempted to use. The Court thus must conclude that the arrests were lawful and accordingly,

---

1. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)

2. New York City Administrative Code § 26–521 provides in relevant part that

    (a) It shall be unlawful for any person to evict or attempt to evict an occupant of a dwelling unit who has lawfully occupied the dwelling unit for thirty consecutive days or longer or who has entered into a lease with respect to such dwelling unit or has made a request for a lease for such dwelling unit pursuant to the hotel stabilization provisions of the rent stabilization law except to the extent permitted by law pursuant to a warrant of eviction or other order of a court of competent jurisdiction or a governmental vacate order by:

    \*   \*   \*   \*   \*   \*

    (3) engaging or threatening to engage in any other conduct which prevents or is intended to prevent such occupant from the lawful occupancy of such dwelling unit or to induce the occupant to vacate the dwelling unit including, but not limited to, removing the occupant's possessions from the dwelling unit, removing the door at the entrance to the dwelling unit; removing, plugging or otherwise rendering the lock on such entrance door inoperable or changing the lock on such entrance door without supplying the occupant with a key.

    (b) It shall be unlawful for an owner of a dwelling unit to fail to take all reasonable and necessary action to restore to occupancy an occupant of a dwelling unit who either vacates, has been removed from or is otherwise prevented from occupying a dwelling unit as the result of any of the acts or omissions prescribed in subdivision a of this section and to provide to such occupant a dwelling unit within such dwelling suitable for occupancy, after being requested to do so by such occupant, if such owner either committed such unlawful acts or omissions or knew or had reason to know of such unlawful acts or omissions, or if such acts or omissions occurred within seven days prior to such request.

that defendants' actions, viewed objectively, did not violate any federal statutory or constitutional right enjoyed by plaintiff.

Plaintiff's third arrest on November 27, 1986 was based on her admitted intentional violation of the Temporary Order of Protection. An intentional violation of a court order is punishable as criminal contempt under N.Y.Penal L. § 215.50.[3] Again, there is no argument or any facts alleged in the Complaint that would support a conclusion that the November 27, 1986 arrest was made in the absence of probable cause. Accordingly, viewing defendants' conduct objectively, the Court is compelled to find that they did not violate any of plaintiff's federal statutory or constitutional rights.[4]

### B. Defendants' Actions on January 13, 1987

■ As alleged in the Complaint, defendants assisted the Tenants in vacating the premises on January 13, 1987, and despite plaintiff's insistence, refused to search the Tenants' boxes for property owned by plaintiff. Plaintiff argues that a special duty to her arose when defendants were informed that a crime was in progress. As her theory goes, defendants abrogated that duty and thereby deprived plaintiff of her constitutional rights when they failed to prevent the Tenants from allegedly converting her property.

"The government owes a duty to protect a person from harm only if there is a 'special relationship' between that person and the government." *Barbera v. Smith,* 836 F.2d 96, 101 (2d Cir.1987) (citing *Ellsworth v. City of Racine,* 774 F.2d 182, 185 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986)). A

"special relationship" exists for the benefit of a person who is under the government's control. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (duty owed to prison inmates); *Doe v. New York City Dep't of Social Services,* 649 F.2d 134 (2d Cir.1981) (duty owed to children in foster care). There is no allegation here that plaintiff, or her tenants, were in custody or otherwise within defendants' control. The mere communication by plaintiff to defendants that the Tenants had taken unspecified items of her property does not create a "special relationship" requiring defendants to take some action to protect her.

■ Even were the Court to assume that a special relationship existed, qualified immunity would nevertheless attach. It was by no means "clearly established" in 1986–1987 that defendants owed a special duty to a person in plaintiff's position. The Second Circuit has stated (indeed, almost a year *after* the events at issue here) that *"[e]ven today,* '[t]he contours of what constitutes a "special relationship" ... are hazy and indistinct.'" *Barbera, supra,* 836 F.2d at 102 (quoting *Ellsworth, supra,* 774 F.2d at 185) (emphasis added).

### C. Conspiracy

■ Paragraph 70 of the Complaint alleges that defendants and the Tenants conspired to deprive plaintiff of her fourth and fourteenth amendments rights. The vague and conclusory allegations of this paragraph are insufficient upon which to base a conspiracy claim between State actors and private individuals. *See Bittner v. Smith,* 697 F.Supp. 144, 155–56 (S.D.N.Y.1988). Further, based on the language of ¶ 70, the Court can only assume that the overt acts

---

**3.** Section 215.50(3) provides that

    A person is guilty of criminal contempt in the second degree when he engages in any of the following conducts:

        \*     \*     \*     \*     \*

    3. Intentional disobedience or resistance to the lawful process or other mandate of a court except in cases involving or growing out of labor disputes as defined by subdivision two of section seven hundred fifty-three of the judiciary law; or

        \*     \*     \*     \*     \*

    Criminal contempt in the second degree in a class A. misdemeanor.

**4.** Plaintiff's only argument with respect to the lawfulness of the three arrests is that the arrests were unreasonable because the officers knew or should have known that plaintiff was the victim of her own tenants' actions. Assuming this to be true, the Court cannot conclude that the officers were *objectively* unreasonable. Clearly, plaintiff broke the law and subjected herself to arrest. Whether plaintiff had a defense to her unlawful actions, *i.e.* necessity, is another matter entirely.

of the conspiracy are the same acts to which qualified immunity attaches. Accordingly, the conspiracy claim must fail as well. *See Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir.1987).

## CONCLUSION

Plaintiff's 1983 claim is hereby dismissed. Plaintiff's three pendent state claims, having no independent jurisdictional basis, are also dismissed. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966).

SO ORDERED.