ARMCO INC., Armco Financial Services Corporation, Armco Financial Services International Limited, Armco Pacific Limited, and Northwestern National Insurance Company, Plaintiffs,

v.

NORTH ATLANTIC INSURANCE COMPANY LIMITED, Roger T. Donohue, Patrick H. Rossi, Larry L. Stinson, David W. Atkins, International Trustee and Receivership Services, Inc., International Run–Off Services, Inc., Wingfield Limited, CI Services Holdings Limited, and NPV Limited, Defendants.

No. 98 Civ.6084(AGS).

United States District Court, S.D. New York.

Sept. 30, 1999.

. Ronald DeKoven, Stephen Fishbein, Shearman & Sterling, New York City, for plaintiffs.

Patrick C. Duncan, Jr., Gibbons, Del Deo Dolan, Griffinger & Vecchione, P.C., New York City, for defendants.

## OPINION AND ORDER

SCHWARTZ, District Judge.

This action was filed by plaintiff Armco Inc. ("Armco") and four of its subsidiaries to recover funds allegedly obtained fraudulently from them by defendants. Plaintiffs assert causes of action for common law fraud, conversion, breach of fiduciary duty, and violation of the Federal Racketeer Influenced and Corrupt Organizations Act. Before the Court are motions by certain of the defendants to dismiss on grounds of (i) lack of personal jurisdiction, (ii) improper venue, and (iii) forum non conveniens. For the reasons set forth below, the motion is DENIED.

### FACTUAL BACKGROUND[1]

Plaintiff Armco, the direct or indirect parent of its co-plaintiffs, is incorporated under the laws of the State of Ohio with its principal place of business in Pittsburgh, Pennsylvania. (Amended Complaint ("Compl.") ¶ 7.) Plaintiff Armco Financial Services Corporation ("AFSC") is a corporation existing under the laws of the State of Delaware, with its principal place of business in Middletown, Ohio. (Id. ¶ 8.) AFSC owned the majority of Armco's finance leasing and insurance businesses during the period relevant to this case. (Id.) Plaintiff Armco Financial Services International Limited ("AFSIL") is a corporation existing under the laws of the State of Delaware, with its principal place of business in Middletown, Ohio. (Id. ¶ 9.) AFSIL owned part of a group of insurance subsidiaries now called the North Atlantic Group during the period relevant to this case. (Id.) Plaintiff Armco Pacific Limited ("APL") is a corporation existing under the laws of Singapore with its principal place of business in Singapore. (Id. ¶ 10.) APL was engaged in the business of finance and leasing during the period relevant to this case. (Id.) Plaintiff Northwestern National Insurance Company ("Northwestern") is a corporation existing under the laws of the State of Wisconsin, with its principal place of business in Middletown, Ohio. (Id. ¶ 11.) Northwestern was engaged in the insurance and reinsurance business during the relevant period. (Id.)

In 1990, Armco sought to dispose of a group of insurance subsidiaries which are now known as the North Atlantic Group (the "Group").[2] (Id. ¶ 1.) Armco became interested in selling the North Atlantic Group, in a management buy-out, to defendants David W. Atkins and Roger T. Donohue, who were then the Managing Director and Chairman, respectively, of the Group. (Id.) The sale of the Group was negotiated, on behalf of Armco, by two individuals who were then Armco executives, and who are also defendants in this action: Patrick H. Rossi and Larry L. Stinson. (Id. ¶ 1.) Rossi and Stinson currently reside in Ohio. (Id. ¶¶ 14, 15.) Atkins resides in England, and Donohue, a citizen of the United Kingdom, resides in Singapore. (Id. ¶¶ 12, 13.)

At the time of the negotiation of the management buy-out, the Group was in "run-off" status. (Id. ¶ 2.) This meant that no new policies were being issued by the insurance subsidiaries in the Group, and the business of the Group consisted solely of paying out claims on pre-existing insurance contracts as they became due. (Id.) The sale of the Group therefore was expected to involve a financial transfer from the Armco companies to the Group, which

---

1. The following facts are alleged in complaint and not disputed for the purposes of this motion.

2. The previous name of the North Atlantic Group was the British National Group. (Compl. ¶ 46.)

would then be acquired by Atkins and Donohue for nominal consideration. (*Id.*) After the sale, the Group would pay off the claims on its insurance policies with the funds initially contributed by Armco and its affiliates. (*Id.*)

According to plaintiffs, Atkins, Donohue, Rossi, and Stinson (collectively, the "Individual Defendants") secretly agreed prior to the sale of the Group that Rossi and Stinson would become joint owners of the Group with Atkins and Donohue after the management buy-out. (*Id.* ¶ 3.) Defendant Wingfield Limited ("Wingfield"), a corporation existing under the laws of Jersey, Channel Islands, and with its principal place of business in Jersey, was the acquisition vehicle used by Donohue and Atkins to purchase the North Atlantic Group from Armco. (*Id.* ¶ 18.) Plaintiffs allege that Wingfield was secretly owned also by Rossi and Stinson. (*Id.* ¶¶ 3, 18.)

The sale of the Group was completed on September 3, 1991 upon the execution of a contract of sale (the "Sale Contract") in the New York City offices of Armco's attorneys. (*Id.* ¶ 45.) The Sale Contract consisted principally of Wingfield's purchase of CI Services Holding Limited ("CISHL"), which held the assets of the North Atlantic Group, from plaintiff AFSIL and another Armco affiliate.[3] (*Id.* ¶¶ 12, 18.) CISHL, also a defendant in this action, is incorporated and has its principal place of business in Jersey. (*Id.* ¶ 19.) As part of the agreement between parties, Armco affiliates contributed over $40 million to CISHL. (*Id.* ¶ 45.) The Sale Contract also contained a forum selection clause providing that all disputes arising out of the transaction would be resolved by the courts of England. (Agreement for the Sale and Purchase of the Whole of the Issued Share Capital of CISHL ("Sale Contract"), set forth as Exhibit 4 to the Affidavit of Stephen Fishbein in Opposition to Certain Defendants' Mo-

tion to Dismiss the Complaint ("Fishbein Aff.") at 34.)

Plaintiffs assert that the Sale Contract was not the product of an arms-length negotiation but rather part of a wide-ranging conspiracy to defraud Armco and its affiliates out of millions of dollars. (Compl. ¶ 3.) Plaintiffs assert that, because their representatives Rossi and Stinson were secret partners of the purchasers, the terms of the Sale Contract were biased in favor of the purchasers at the expense of plaintiffs. (*Id.*) Specifically, plaintiffs allege that the Sale Contract resulted in Armco's making an excessive contribution to the Group, permitting the defendants to enrich themselves at plaintiffs' expense.

In addition to the fraudulent inducement of the sale agreement, plaintiffs allege that defendants engaged in further fraud after the transfer of the Group to their control. According to plaintiffs, the Individual Defendants, acting in concert with the principal insurance subsidiary of the Group, now called North Atlantic Insurance Company ("NAIC"), further increased the available assets of the Group by fraudulently withdrawing funds from two trust funds that NAIC had previously established in favor of plaintiff Northwestern. (*Id.* ¶¶ 4, 46.) Defendant NAIC is an insurance company existing under the laws of the United Kingdom with its principal place of business in England. (*Id.* ¶ 21.)

Plaintiffs allege that defendants completed their scheme by diverting funds from the Group to themselves. (*Id.* ¶ 5.) Defendants allegedly accomplished this by means of excessive "acquisition fees," "dividends," "commissions," and "consulting fees," paid either to the Individual Defendants themselves or to corporate entities they controlled. (*Id.* ¶ 5.) Plaintiffs allege that more than $ 16 million was fraudulently obtained by defendants from the Group between 1991 and 1997. (*Id.*)

---

3. The other Armco affiliate was Armco Financial Services Europe Limited, which is not a plaintiff in this action. (Compl. ¶ 9.) That company was dissolved in 1994 and its assets were transferred to Armco. (*Id.*)

Other corporate entities allegedly controlled by the Individual Defendants and used in furtherance of the alleged fraud are (i) defendant International Trustee and Receivership Services, Inc. ("ITRS"), a corporation organized under the laws of the State of Ohio with its last known principal place of business in Ohio, and which was controlled by defendant Rossi in connection with the alleged fraud, (Compl.¶16); (ii) defendant International Run–Off Services, Inc. ("International Run–Off"), a corporation existing under the laws of the State of Ohio with its last known principal place of business in Ohio, and which was controlled by defendant Stinson in connection with the alleged fraud, (Id. ¶17); and (iii) defendant NPV, a corporation existing under the laws of Nevis, with its principal place of business in Singapore, (Id. ¶20).

The immense fraud was exposed, according to the complaint, because the diversion of funds from the Group eventually led to the insolvency of NAIC in 1997. (Id. ¶6.) Atkins had resigned from the Group in 1995, and subsequent to the initiation of the NAIC insolvency proceeding, the other Individual Defendants transferred funds to NAIC which plaintiffs allege represent monies fraudulently obtained by them from Armco and its affiliates. (Id.)

Plaintiffs commenced the present action to recover the funds that they allege were taken under false pretenses by the Individual Defendants and corporate entities they controlled. (Id.) The Amended Complaint states claims arising under the common law doctrines of fraud, conversion, and breach of fiduciary duty, as well as under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Because defendant NAIC is in provisional liquidation, this action was originally filed as an adversary proceeding in the bankruptcy court. Upon the motion of NAIC, however, the bankruptcy court dismissed the claims against NAIC on the grounds that they were barred by the court's previously issued injunction. Plaintiffs moved this Court to withdraw the reference of the action to the bankruptcy court, and, NAIC having been dismissed from the case, this Court granted the motion on February 3, 1999. (See Order of the Court dated February 3, 1999.)

While the appeal from the bankruptcy court's order dismissing the claims against NAIC was pending, NAIC entered into a settlement with plaintiffs. Defendant Atkins has also settled with plaintiffs and agreed to come to New York to testify on their behalf. A consent judgment between plaintiffs and Atkins was entered by this Court on August 24, 1999. Cf. Armco Inc. v. North Atlantic Ins. Co. Ltd., No. 98 Civ. 6084(AGS), 1999 WL 173579 (S.D.N.Y. Mar.29, 1999) (overruling certain defendants' objection to the entry of the consent judgment).

The case is now before the Court upon the motion to dismiss on various grounds made by Rossi, Stinson, Wingfield, ITRS, International Run-off, and CISHL (the "Moving Defendants").

### DISCUSSION

Moving Defendants seek dismissal of this action on three grounds: (1) lack of personal jurisdiction, (2) improper venue, and (3) forum non conveniens, each of which is separately addressed below.

### I. PERSONAL JURISDICTION

Moving Defendants move to dismiss this action pursuant to Federal Rule of Procedure 12(b)(2) for lack of jurisdiction over the person. On a motion to dismiss pursuant to Rule 12(b)(2), all pleadings and affidavits must be construed in the light most favorable to plaintiffs, and all doubts resolved in plaintiffs' favor. See Herbstein v. Bruetman, 768 F.Supp. 79, 81 (S.D.N.Y.1991) (citing CutCo Industries, Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir.1986)). In order to "withstand a 12(b)(2) motion to dismiss, [plaintiffs] need only make out a prima facie case of per-

sonal jurisdiction." *Id.* (citing *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 768 (2d Cir.1983)).

Federal Rule of Civil Procedure 4(k)(1)(A) provides that service of a summons is effective to establish jurisdiction over the person of a defendant if that defendant "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." The New York long arm statute exerts jurisdiction over, *inter alia,* a non-domiciliary who "commits a tortious act within the state...." N.Y.C.P.L.R. § 302(a)(2) ("§ 302(a)(2)").

### A. ROSSI AND STINSON

■ Defendants Rossi and Stinson are subject to the personal jurisdiction of this Court because it is alleged that they committed tortious acts within New York State and this district. *See* § 302(a)(2). To satisfy New York's long-arm statute, the complaint must "adequately fram[e] a cause of action in tort arising from those acts." *PI, Inc. v. Quality Products, Inc.,* 907 F.Supp. 752, 760 (S.D.N.Y.1995) (citing *Evans v. Planned Parenthood of Broome County, Inc.,* 43 A.D.2d 996, 352 N.Y.S.2d 257, 259 (3d Dep't 1974)).

Plaintiffs' complaint asserts causes of action for common law fraud, breach of fiduciary duty, and RICO violations that arise from numerous and specific acts committed by Rossi and Stinson within New York. Plaintiffs allege that the agreement whereby Rossi and Stinson would become secret partners of Atkins and Donohue with respect to the purchase of the North Atlantic Group was entered into in New York. (Compl.¶ 34). Plaintiffs further allege that defendants Rossi and Stinson visited New York on at least three separate occasions, for a total of 17 days, when "negotiating" with Atkins and Donohue the sale of the North Atlantic Group.

(Compl.¶ 44.)[4] The contract closing, which was a key act in furtherance of the alleged conspiracy, occurred on September 3, 1991 in a conference room at a New York law firm. (*Id.* ¶ 45.) Rossi testified that he signed hundreds of documents that day. (Rossi Dep. at 110.) All Individual Defendants were present at the closing.

### B. WINGFIELD

■ Wingfield is also subject to the jurisdiction of this Court based on plaintiffs' allegations of tortious acts committed by Wingfield in New York. Donohue and Atkins, as representatives of Wingfield, met in New York with Rossi and Stinson to conclude the purchase of the North Atlantic Group by Wingfield. Plaintiffs allege that Wingfield, by means of its representatives, deceived plaintiffs by failing to disclose that it was owned also by Rossi and Stinson. (Compl.¶ 38.) Wingfield then entered into the Sale Contract with the Armco companies under false pretenses. Because Wingfield is alleged to be a key participant in the tortious acts committed in New York in the furtherance of the scheme to defraud plaintiffs, it is subject to jurisdiction under § 302(a)(2).

### C. CISHL

■ CISHL is also subject to this Court's jurisdiction because it was allegedly a participant in the fraud that occurred in New York and the scheme to defraud plaintiffs. During the course of the execution of the Sale Contract, which involved the transfer of CISHL from the Armco companies to Wingfield, CISHL took concrete actions, such as executing powers of attorney authorizing Rossi and Stinson to act on its behalf. (Rossi Dep. at 8–9; Stinson Dep. at 130–31.) Further, at the time of the closing of the sale transaction, Atkins and Donohue were appointed directors of CISHL and signed documents

**4.** Rossi's and Stinson's depositions support these allegations of presence in New York. (Deposition of Patrick Rossi ("Rossi Dep."), annexed as Exhibit 2 to Fishbein Aff., at 66 – 70, 76, 78; Deposition of Larry Stinson ("Stinson Dep."), annexed as Exhibit 3 to Fishbein Aff., at 99–110).

on behalf of the company while present in New York. (Exhibit 14 to Fishbein Aff.; Rossi Dep. 138–40.) Under the circumstances of this case, these contacts are sufficient to subject CISHL to this Court's jurisdiction.

## D. INTERNATIONAL RUN–OFF AND ITRS

■ This Court has personal jurisdiction over defendants International Run-off and ITRS under § 302(a)(2) because these defendants were allegedly co-conspirators with the other defendants in the scheme to defraud plaintiffs. Plaintiffs allege that these two defendants participated in the conspiracy by, *inter alia,* receiving fraudulent consultant fees, acquisition fees, dividends, and commissions. (Compl.¶ 51, 52.)[5] This diversion of funds was integrally related to previous fraudulent acts, such as the inducement of the fraudulent Sale Contract, because prior fraudulent acts provided the North Atlantic Group with excess funds that could be siphoned off by International Run-off and ITRS, and used for the benefit of their shareholders, Rossi and Stinson. As members of the conspiracy who were both aware of and benefited from fraudulent acts committed by their co-conspirators in New York, International Run-off and ITRS are responsible for the jurisdictional contacts of their co-conspirators. *See Chrysler Capital Corp. v. Century Power Corp.,* 778 F.Supp. 1260, 1266

---

**5.** The Court notes that Rossi and Stinson testified at their depositions that funds were diverted from NAIC to International Run-off and ITRS. (Rossi Dep. at 200–201; Stinson Aff. at 73, 76–77).

**6.** As an alternative, plaintiffs allege that this Court may assert jurisdiction over International Run-off and ITRS by means of piercing their corporate veils. (Compl. ¶ 54; Plaintiffs' Memorandum of Law in Opposition to Certain Defendants' Motions to Dismiss the Complaint ("Pl.Mem.Law") at 16.) Although the Court need not decide this issue, plaintiffs have made allegations which, if supported, would establish a prima facie case that these defendants are mere shell corporations dominated by Rossi and Stinson and used by them in furtherance of their fraud. *See Wm. Passa-*

(S.D.N.Y.1991); *Madanes v. Madanes,* 981 F.Supp. 241, 261 (S.D.N.Y.1997).[6]

■ The Court finds that plaintiff has made a prima facie case that defendants are subject to its personal jurisdiction, and the motion to dismiss for lack of jurisdiction over the person is DENIED.[7]

## II. IMPROPER VENUE

■ Moving Defendants assert that the forum selection clause in the Sale Contract (the "Forum Selection Clause" or "Clause") prohibits plaintiffs from maintaining this action in New York. Plaintiffs respond that the Forum Selection Clause does not apply to the present action. If the district court concludes that a valid forum selection clause exists, it "must enforce the forum-selection provision absent a clear showing [by the party opposing enforcement] that enforcement would be 'unjust' or that the clause is 'invalid for such reasons as fraud or overreaching.'" *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.,* 145 F.3d 505, 510 (2d Cir.1998) (citations omitted). However, on this motion, the "party seeking to avoid enforcement of [a forum selection clause is] entitled to have the facts viewed in the light most favorable to it, and no disputed fact should be resolved against that party until it has had an opportunity to be heard." *New Moon Shipping Co.,*

---

*lacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 137–38 (2d Cir. 1991). (*See also* Rossi Dep. at 20–21, 183–5, 193; Stinson Dep. at 30–1, 39–41, 50–73.)

**7.** The Court also finds that, because of the aforementioned numerous contacts of defendants with the State of New York, as well as the factors discussed in Part III, *infra,* defendants have subjected themselves to New York law, and this Court's assertion of personal jurisdiction over them is reasonable and consistent with notions of fair play and substantial justice. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Metropolitan Life v. Robertson–Ceco Corp.,* 84 F.3d 560 (2d Cir.1996).

*Ltd., v. Man B&W Diesel Ag,* 121 F.3d 24, 29 (2d Cir.1997).

Plaintiffs contend that the Forum Selection Clause (i) is not applicable to the instant litigation because the claims asserted in the complaint do not fall within the Clause's scope; (ii) is unenforceable because it was induced by fraud; and (iii) is unenforceable in the context of this litigation because only one Moving Defendant and two plaintiffs were parties to the Sale Contract containing the Clause. Applying the relevant standards, and viewing the facts in the light most favorable to plaintiffs, the Court concludes that plaintiffs have made a prima facie showing that the Forum Selection Clause does not apply to this action.

### A. THE SCOPE OF THE FORUM SELECTION CLAUSE DOES NOT ENCOMPASS THIS ACTION, WHICH INVOLVES ALLEGATIONS OF A PRE–CONTRACT SCHEME TO DEFRAUD PLAINTIFFS.

▮▮▮ The Court finds that the allegations of a wide-ranging conspiracy to defraud plaintiffs are not claims that fall under the scope of the Forum Selection Clause contained in the Sale Contract. "The applicability of a forum selection clause is governed by 'objective consideration of the language' of the clause." *Anselmo v. Univision Station Group, Inc.,* No. 92 Civ. 1471(RLC), 1993 WL 17173, at *1 (S.D.N.Y. Jan.15, 1993) (citations omitted). The Forum Selection Clause in the Sale Contract provides that

> the parties irrevocably submit themselves to the exclusive jurisdiction of the English Courts to settle any dispute which may arise out of or in connection with this Agreement.

(Sale Contract ¶ 18(a), at 34.) Because this action did not "arise out of or in connection with" the Sale Agreement, the Forum Selection Clause is inapplicable.

This action is not one that "arose out of" the Sale Contract. Plaintiffs are not suing for breach of the Sale Contract, alleging any lack of performance required by the Sale Contract, or disputing either party's rights or obligations under the Sale Contract. Rather, plaintiffs allege in the complaint a series of fraudulent activities that included the negotiation and execution of the subject Sale Contract. This action arose out of the alleged wide ranging fraud, including numerous acts committed before the execution of the Sale Contract.

The Court also concludes that this action did not arise "in connection" with the Sale Contract, but rather should be viewed independently of that contract. The Court reaches this conclusion, to a significant extent, because plaintiffs allege the existence of a large scale scheme to defraud that included numerous pre-contract activities by defendants, and properly assert a cause of action arising out of that fraud. The conclusion of the court in *Anselmo* supports this view. *See Anselmo,* 1993 WL 17173. The *Anselmo* court was required to interpret a forum selection clause with language covering claims "relating to" the underlying agreement. *Id.* That court found the "relating to" language to be "broad enough to encompass claims not explicitly grounded in the Agreement .... [and enforceable if the] claims [asserted in the complaint] grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship." *Id.* The court concluded, however, that "plaintiff's tort claim ... d[id] not 'relate to' the Agreement because the tort grew out of events which preceded the Agreement." *Anselmo,* 1993 WL 17173, at *2.

Here, plaintiffs assert tort claims that also allegedly grew out of events and acts by defendants *preceding* the execution of the contract. Plaintiffs allege that the Individual Defendants, together with their corporate entities, were engaged in a broad scheme to defraud plaintiffs out of vast sums of money. Part of the alleged scheme involved, for example, the creation

of Wingfield as a vehicle for defendants' fraudulent activities, and the misrepresentation to plaintiffs that Wingfield was owned solely by Atkins and Donohue, when it was in fact allegedly also owned by plaintiffs' representatives Rossi and Stinson. (Compl.¶ 68.) These allegations predate the signing and negotiation of the sale agreement, and do not arise from its terms.

The "gist" of plaintiffs' claims is not the breach of a contractual relationship, but the series of acts by defendants resulting in the fraud. *Cf. Anselmo*, 1993 WL 17173, at *2. In addition to the fact that plaintiffs base their fraud claims on numerous pre-contract activities by defendants, plaintiffs' cause of action for breach of fiduciary duty is also not based on the terms or relationships embodied in the Sale Contract. Plaintiffs allege that Rossi and Stinson, by acting as plaintiffs' principal representatives during the negotiation of the Sale Contract, had an affirmative duty to disclose their interest in Wingfield, and are therefore liable to plaintiffs for their breach of this duty. (Compl.¶¶ 74–79.) This cause of action does not arise out of the Sale Contract itself, but rather out of the course of Rossi's and Stinson's representation of plaintiffs' interests during the negotiation of the contract. The relationship upon which this claim is based is between Armco, Rossi and Stinson—not between the parties to the Sale Contract.

Further support for the Court's conclusion that the Forum Selection Clause is inapplicable to this case is derived from the fact that an English court involved in related Armco litigation has made expressly the same finding. The English court, in *Donohue v. Armco, Inc., et al.*, 1999 Folio No. 211, Commercial Court, Queen's Bench Division (July 16, 1999) (Hon. Mr. Justice Aikens) (hereinafter referred to as the "English Decision"), was presented with the issue as to whether it should grant a petition to enjoin the present litigation (referred to by the court as the "NY Proceedings") on the basis of the Forum Selection Clause contained in the Sale Contract. The English court refused to issue an injunction, concluding, *inter alia,* that

> the claims raised in the N.Y. Proceedings based on a pre-existing conspiracy to defraud Armco are not claims that "arise out of" [the Sale Agreement].... They "arise out of" the agreement to conspire against Armco and to defraud it.

(English Decision ¶ 42, at 21.)

*WMW Machinery, Inc. v. Werkzeugmaschinenhandel GmbH IM Aufbau,* 960 F.Supp. 734 (S.D.N.Y.1997) illustrates the contrasts between the current action and one where the tort claims did in fact arise out of a contractual relationship. The *WMW Machinery* court was faced with the question as to whether the plaintiff's tort claims should be subject to a forum selection clause that was contained in a contract between the parties. The contract gave the plaintiff exclusive rights to distribute machinery in North America, and the plaintiff had purchased large quantities of machine tools under the contract. *See id.* at 738. When the defendant held up shipment of plaintiff's goods, plaintiff sued for, *inter alia,* the tort of wrongful conversion. The defendants contended that because the plaintiff's "wrongful conversion claim relate[d] to goods and alleged obligations which were the subject of the [Agreement] ... that claim 'ar[ose] out of or in connection' with the Agreement and must, therefore, be resolved by an appropriate German court [as specified by the forum selection clause]." *Id.* at 747. The *WMW Machinery* court agreed and enforced the clause. *See id.*

The contrast between *WMW Machinery* and the current case is evident. In *WMW Machinery,* although the complaint asserted a tort claim, it did not alter the fact that the plaintiff was seeking redress for having been denied benefits guaranteed to it by the exclusive distribution agreement containing the forum selection clause. Here, by contrast, plaintiffs' claims do not

derive from entitlements or benefits granted in the Sale Contract—quite the opposite. Further, the origin of the current dispute was not a contractual relationship as it was in *WMW Machinery*, but rather a pre-existing comprehensive scheme by the defendants to defraud plaintiffs, of which the signing of the Sale Contract was merely one important aspect.

The Court notes that similar reasoning has been used in the context of a choice of law clause. In *Telemedia Partners Worldwide Ltd. v. Hamelin Ltd.*, 1996 WL 41818, at *7–8 (S.D.N.Y. Feb.2, 1996), the court held that a limited choice of law clause did not apply to a RICO claim "based on allegations of mail and wire fraud antedating the existence of the agreement and which goes beyond issues merely of construction and enforcement of the Agreement." *Id.* The same reasoning applies here, where the alleged fraud is much broader than the sale contract at issue, and allegedly predates it.

**B. THE FORUM SELECTION CLAUSE DOES NOT DEFEAT VENUE IN THIS DISTRICT BECAUSE PLAINTIFFS ALLEGE THAT THEIR AGREEMENT TO THE CLAUSE WAS INDUCED BY FRAUD.**

 Even if the Forum Selection Clause did apply to this dispute, it would not bar the present action from proceeding because plaintiffs have properly alleged that they were fraudulently induced to agree to the Clause. A forum selection clause is not enforceable if "the inclusion of that clause in the contract was the product of fraud...." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). A forum selection clause will not be enforced unless it was the product of an "arms length negotiation" and the clause was "a

'vital part of the agreement' so as to make it believable that the parties conducted their negotiations with the clause in mind." *Full–Bright Indus. Co., Ltd. v. Lerner Stores, Inc.*, No. 90 Civ. 5054(CSH), 1991 WL 84541, at *2 (S.D.N.Y. May 14, 1991) (citing *Lexington Investment Co. v. Southwest Stainless, Inc.*, 697 F.Supp. 139, 143 (S.D.N.Y.1988) (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 12–14, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972))).

Plaintiffs, by alleging facts supporting the conclusion that the Forum Selection Clause was not an arms length transaction have made a "prima facie showing ... [that] would support the court's exercise of jurisdiction." *New Moon Shipping*, 121 F.3d at 29. Plaintiffs have set forth facts in the complaint that suggest that similar transactions of this type normally contain non-exclusive forum selection clauses. (Compl.¶ 42.) Plaintiffs also assert that an initial draft of the agreement provided for New York law to govern, and contained no forum selection clause, until Rossi directed Armco's lawyers to switch forms to one that made use of exclusive U.K. forum and choice of law clauses.[8] Because plaintiffs allege that Rossi, who was charged with protecting plaintiffs' interests in the contract negotiations, was secretly working with the other defendants in this action to defraud plaintiffs, it is not unreasonable to infer that Rossi may have included the Forum Selection Clause in order to further the alleged fraud. Similarly, if, as defendants suggest, Wingfield's attorneys first suggested the inclusion of the Forum Selection Clause, it is not unreasonable to assume that Rossi and Stinson agreed to the Clause's inclusion in order to further their alleged fraud.

The Court therefore finds that the allegations that the Forum Selection Clause was the product of fraud provides an alter-

---

8. *See* Pl.Mem.Law at 27; Exhibit 5 to Fishbein Aff. at 39; Letter from Lawrence Ziman to Adrian Wong and Stuart Carroll, set forth as Exhibit 6 to Fishbein Aff. ("Ziman Letter") at 1. Defendants' assertions that, here, "En-

glish form" did not imply the use of a different forum selection clause do not change this result. Plaintiffs need only establish a prima facie case at this stage of the proceedings.

native basis for its conclusion that the Clause does not prevent this suit from proceeding in New York.[9] The motion to dismiss premised on the Forum Selection Clause is DENIED.[10]

## III. FORUM NON CONVENIENS

Moving Defendants move to dismiss the claims against them based on the doctrine of forum non conveniens, contending that England is the more appropriate forum for the resolution of this dispute. (Defendants' Memorandum of Law in Support of Motion to Dismiss at 29.) A district court has broad discretion in deciding whether to dismiss an action on forum non conveniens grounds. *See R. Maganlal & Co. v. M.G. Chemical Co., Inc.* 942 F.2d 164, 167 (2d Cir.1991) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

There is a strong presumption in favor of a U.S. plaintiff's choice of a U.S. forum.[11] To prevail on a motion to dismiss based on forum non conveniens, a defendant must demonstrate (i) that an adequate alternative forum exists and (ii) that considering the relevant private and public interest factors, "the balance of convenience tilts strongly in favor of trial·in the alternative forum" because a trial would lead to "oppressiveness and vexation to defendant ... out of all proportion to plaintiff's convenience." *ESI, Inc. v. Coastal Power Production Co.*, 995

F.Supp. 419, 425 (S.D.N.Y.1998) (citing *Piper Aircraft*, 454 U.S. at 241, 102 S.Ct. 252); *Piper Aircraft*, 454 U.S. at 241, 102 S.Ct. 252 (citing *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)). Although trial in England would be an adequate alternative·forum, the court concludes that the relevant private and public factors indicate that litigating this case in the United States is completely appropriate. Permitting this trial to proceed in New York would be neither oppressive nor vexatious to defendants.

The public and private factors a court must consider in evaluating a forum non conveniens motion were set forth by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Among the private factors to be considered are: (i) ease of access to proof, (ii) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining those witnesses, (iii) all other factors that make a trial of a case easy, expeditious, and inexpensive. *See R. Maganlal*, 942 F.2d at 168 (citing *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839). First, it will be noted that not a single Moving Defendant is a resident of England, nor is any plaintiff. The two Individual Moving Defendants, Rossi and Stinson, are residents of Ohio, two corporate Moving Defendants are Ohio corporations, and·two other corporate Moving

9. The Court therefore need not address plaintiffs' argument that the Forum Selection Clause is inapplicable to this action given that only one Moving Defendant and two plaintiffs were parties to the Sale Contract.

10. The Court also concludes that venue in this district is appropriate pursuant to 28 U.S.C. § 1391(b) because "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of New York. *See* Section I, *supra* (discussing events that occurred in New York such as the signing of ·the Sale·Contract, the misrepresentations that occurred at that time, and the alleged secret agreement concluded in New York). *See also Andre Emmerich Gallery, Inc. v. Segre*, No. 96 Civ. 889(CSH), 1997 WL

672009, at *7 (S.D.N.Y. Oct.29, 1997) ("Plaintiff does not need to establish that the Southern District has the most substantial contacts to the dispute; rather, it is sufficient [to show] that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere.") (citing *Neufeld v. Neufeld*, 910 F.Supp. 977, 986 (S.D.N.Y.1996) (quoting *Leucadia National Corp. v. FPL Group Capital Inc.*,·No. 93 Civ. 2908(LAP), 1993 WL 464691, at *6 (S.D.N.Y. Nov.9, 1993))).

11. Plaintiffs' preference for a U.S. forum would be entitled to less weight if plaintiffs were foreign parties. *See Piper Aircraft*,· 454 U.S. at 255–56, 102 S.Ct. 252.

Defendants are Jersey corporations controlled by Rossi and Stinson. Two of the major English defendants, NAIC and Atkins, have settled with plaintiffs, and a third, Donohue, is not actively participating in the litigation and, in any event, resides in Singapore. Additionally, all but one of the plaintiffs are U.S. corporations,[12] and assert that the majority of their relevant documents are located in the United States.

Defendants assert that many of their witnesses are located in England. Even if this were true, "the unavailability of witnesses [is] not a sufficiently weighty concern to require forum non conveniens dismissal because any testimony [that the defendant] needs from witnesses whose attendance cannot be compelled can be obtained, for example, through the use of letters rogatory." *United States ex rel. Thistlehwaithe v. Dowty Woodville Polymer, Ltd.*, 976 F.Supp. 207, 213 (S.D.N.Y. 1997) (denying defendant's motion to dismiss for forum non conveniens). Moving Defendants do not assert that letters rogatory are unavailable with respect to their witnesses currently residing in England.

Further, plaintiffs allege that the secret fraudulent scheme perpetrated by defendants was planned, to a significant extent, at meetings that took place in New York. Witnesses testifying as to these meetings would likely be found in New York. Additionally, the Sale Contract was executed in New York, and non-party witnesses with respect to the negotiation and execution of that contract will likely be found in New York.

■ Among the public factors to be considered by a Court in evaluating a forum non conveniens motion are (i) court congestion, (ii) interest of forums in deciding local disputes, (iii) interest in issues of foreign law being decided by foreign tribunals. *See Gulf Oil*, 330 U.S. at 508–509, 67 S.Ct. 839; *PT United* 138 F.3d at 74; *R. Maganlal*, 942 F.2d at 168. It is beyond

doubt that "[t]he United States has an interest in ensuring that fraud does not occur within its borders...." *Bank of Crete, S.A. v. Koskotas*, 1991 WL 280714, at *4 (S.D.N.Y. Dec.20, 1991). Further, the statements of the English courts themselves suggest that the U.S. interest in this action is greater than the English interest. The English court involved in related Armco litigation concluded the following:

> In my view England is not the natural "centre of gravity" for these claims, which have worldwide connections. There are a large number of strands that lead to this conclusion. First the alleged conspiracy is said to have originated in meetings in the U.S. and culminated in a secret written agreement of the group of four in New York in April 1991. Further, the alleged breaches of fiduciary duty by Mr. Donohue to the Armco companies (incorporated and operating in the USA) are said to have taken place in the USA, or at least not in England. Secondly, only one of the alleged conspirators, Mr. Atkins, resides in England.... Wingfield and CIHSL are Jersey companies, but with no obvious connections with England. Fourthly, four of the Armco compan[ies] ... are incorporated in American states.... Further, none of the Armco companies carries on business in England.... Sixthly, the key witness on the Armco side ... Atkins, although a resident of England, has agreed to give evidence in New York ... Seventhly, the RICO statute claims can only be brought in the USA.

(English Decision ¶ 63(3), at 32–33.) The English court went on to state that:

> the connections with England are slim.... It seems likely that English substantive law will be of marginal significance in the N.Y. Proceedings.... In this case most of the key witnesses are not to be found in England.

(English Decision ¶ 63(4), at 33–34.)

This Court concludes that this action, involving U.S. plaintiffs, mostly U.S. or

---

**12.** APL is a Singapore corporation.

non-English defendants, and a fraudulent scheme that allegedly arose in New York, is far removed from the facts of those cases where courts granted the extraordinary remedy of forum non conveniens. *See, e.g., Piper Aircraft,* 454 U.S. at 255–60, 102 S.Ct. 252 (dismissing case on basis of forum non conveniens where the action involved a plane crash and (i) the victims of the crash were Scottish, (ii) the accident occurred in Scottish airspace, (iii) a large portion of relevant evidence was in Scotland, and (iv) the ability to implead other defendants supported holding trial in Scotland). The motion to dismiss based on the doctrine of forum non conveniens must therefore be DENIED.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is DENIED.

SO ORDERED.