**Robert W. LAWLER, Plaintiff,**

v.

**SCHUMACHER FILTERS AMERICA, INC., et al., Defendants.**

Civ. A. No. 3:93CV264.

United States District Court, E.D. Virginia, Richmond Division.

July 12, 1993.

Daniel Gilligan Grove, Washington, DC, for plaintiff.

James Jeffrey Knicely, Robert R. Prince, Knicely & Cotorceanu, Williamsburg, VA, for Schumacher Filters America, Inc.

Gerhard Kelm, Vienna, VA, for Claus G. von Fersen.

Jack Willard Burtch, Jr., Thamer Eugene Temple, III, McSweeney, Burtch and Crump, Richmond, VA, Thomas Stephen Neuberger, Wilmington, DE, for Claus Kreuser and Schumacher Filters, Ltd.

## *MEMORANDUM OPINION*

SPENCER, District Judge.

This matter is before the Court on defendants' four motions to dismiss. For the reasons discussed below, defendants' First Motion to Dismiss (for Improper Venue) will be GRANTED, thus making it unnecessary to rule on defendants' remaining motions.

Plaintiff is a Virginia citizen. Defendants are North Carolina and U.K. corporations and individual foreign nationals. The matter in controversy exceeds $50,000. This Court may exercise jurisdiction pursuant to 28 U.S.C. § 1332, but jurisdiction and venue are both disputed.

### I.

Some of the facts of this case are in dispute; some are not.

#### UNCONTROVERTED FACTS

Plaintiff, Robert W. Lawler, is a Fredericksburg business consultant dealing in the manufacture and distribution of filtration products. Defendants are two corporations and two individual German nationals. Schumacher'sche Fabrik GmbH & Co. K.G. ("Schumacher" or "Schumacher Germany") (not a named defendant) is a multinational corporation headquartered in Crailsheim, Germany, and which has subsidiaries in a number of other countries. Schumacher Filters, Ltd. ("Filters" or "Limited" or "SFL") is the U.K. subsidiary. On July 1, 1988, Schumacher Filters, Inc. ("SFI") was incorporated in Fredericksburg, Virginia as the U.S. subsidiary. On January 26, 1990, Schumacher Germany entered into a joint venture with Selee Corporation of Hendersonville, North Carolina to form Selee–Schumacher, Inc. ("S–S"), with headquarters in Asheville, N.C. SFI was then dissolved and its assets were transferred to S–S. In October 1992, the joint venture between Schumacher Germany and Selee Corporation was dissolved. The successor corporation, Schumacher Filters America, Inc. ("America" or "SFA"), became the U.S. subsidiary of Schumacher Germany alone.

Plaintiff Lawler and Schumacher Germany executed a consultancy agreement on October 12, 1988 (see Oldfield affidavit at 047—the date is shown in the European style as 12.10.88). The agreement, drafted in German, was signed in Rothenburg, Germany. The agreement was effective July 1, 1988 and was terminated effective June 30, 1991.

#### *PLAINTIFF'S VERSION OF THE FACTS*

Plaintiff Lawler, in his Complaint and in a lengthy affidavit, alleges that defendants' are liable to him for a number of counts sounding in contract and tort. Lawler asserts that defendants Kreuser and von Fersen initiated contact with him in late 1987. In January 1988, Lawler travelled to Crailsheim, Germany and met with Kreuser and von Fersen and discussed, among other things, Lawler's terms and conditions. Von Fersen assented to Lawler's terms and stated that he would have a contract drawn up.

According to Lawler, the months between January and October 1988 represent a prolonged version of the classic "bait and switch" tactic. Lawler insisted on payment terms equivalent to those he enjoyed under a previous consultancy agreement with the Seitz company, also a German firm. He even furnished copies of his Seitz contracts in order for Schumacher to use them as a "template" in drafting the new agreement.

Among other things, Lawler insisted on a choice of law/forum selection clause specifying that U.S. law and U.S. courts would be used in the event of a dispute. Kreuser and von Fersen verbally agreed to Lawler's demands, but never produced a written agreement, repeatedly assuring him that they were busy, overburdened and that the Schumacher "lawyers were taking care of matters." This theme was reiterated at meetings in January, April, August, September and finally, in October 1988.

During this period, Lawler had, at Kreuser's and von Fersen's behest, performed various startup duties including setting up meetings with U.S. suppliers and working with a Fredericksburg attorney and a Richmond bank on the details of incorporation and initial financing. Since the consultancy agreement was not due to take effect until July 1, 1988, Lawler, prior to that date, charged his expenses but not his time, to

Schumacher. Among other things, von Fersen promised Lawler that he, Lawler, would be the president of SFI. In September 1988, Lawler received a copy of the agreement, written in German. Kreuser, at Lawler's insistence, faxed Lawler a translation, with the understanding that Lawler would not reveal this (Kreuser's translation) to von Fersen. Lawler's demands had still not been incorporated into the agreement. Kreuser told Lawler that it would all be straightened out when Lawler came to Germany in October for his previously scheduled German language training. At the meeting in Rothenburg, von Fersen once again produced an agreement written in German. When Lawler asked about his payment terms and the governing law/forum selection clause, both Kreuser and von Fersen described internal disagreements between themselves and Henning Vollmer, Schumacher Germany Managing Director, and asserted that the agreement could not be formally changed due to "political reasons."

However, they assured Lawler that all of his demands would be honored and that any shortfall in the payment terms would be made up by payments from SFI. They further assured Lawler that U.S. law and U.S. courts would be used if disputes should arise. At this point Lawler was owed some $20,000 in salary and another $10,000 in unreimbursed expenses. Von Fersen's ultimatum was "Take our word and sign; further negotiation is foreclosed." Accepting their verbal assurances and acting in the belief that he would not otherwise recover the $30,000 due him, Lawler signed.

Schumacher's real goal, according to Lawler, was to exploit Lawler's expertise and network of supplier contacts in order to breathe new life into a firm (SFL) which was stumbling along on antiquated technology. With Lawler's aid, SFL was able to arrange contracts with such firms as PTI (division of Textron) and Gelman Sciences. Lawler asserts that these relationships saved SFL more than one million dollars.

Lawler makes other assertions against von Fersen, Kreuser and Schumacher. He alleges that even though SFI was incorporated, it was never made operational, due to the deliberately dilatory tactics of von Fersen, who hoped thereby to deprive Lawler of the bonus he had been promised when SFI became functional. Lawler asserts that even though von Fersen had promised him the presidency of SFI, with "commensurate authority and additional compensation," von Fersen never intended to fulfill this promise and instead negotiated secretly with Selee Corporation to form the joint venture (S–S) which would absorb SFI and thus reap the rewards of Lawler's efforts on SFI's behalf.

A key allegation by Lawler, denied by all defendants, is that in April 1990, Schumacher Germany assigned its interests in the consultancy agreement (both the written and alleged oral agreement) with Lawler to S–S and SFL, effective May 1, 1990. There is some documentary evidence to support this assertion, but no formal paper of assignment/delegation appears in the materials thus far submitted. This allegation is critical since defendants assert that the real party in interest is Schumacher Germany, a party not joined by Lawler.

Finally, Lawler asserts that he neither speaks nor writes German, a fact which, if true, would cast some light on the relative bargaining positions of the parties when Lawler signed the consultancy agreement on October 12, 1988.

## DEFENDANTS' VERSION OF THE FACTS

The key dates, locations and actors as sketched above are not challenged by the defendants. As might be expected, however, defendants' interpretation of these events is somewhat different. Defendants assert that Lawler's dissatisfaction stems from the alleged failure of defendants to perform under terms of the *written* contract, and that Lawler made no demands pursuant to the alleged oral contract and made no allegations of fraud until the Complaint was filed. Defendants assert that Lawler's attorneys, in six letters sent between July and December 1991, made demands for some $37,000 based on expenses incurred, vacation pay, etc., under terms of the *written agreement* and "never mention[ed] even remotely a claim in fraud, misrepresentation or tort...." Defs.' Mem. in Supp. of Mot. for Injunc. and Stay

of Disc. and Mot. to Dism. for Imp. Venue at n. 2.

Defendants effectively accuse Lawler of outright lying in his Complaint, asserting that Lawler, as an experienced international businessman, knew full well that the written contract would govern their relationship, not any alleged oral side agreement. Defendants point to Article 9.1 of the consultancy agreement: "Any oral collateral agreements are invalid. The agreement between the parties shall be only this written agreement." *Id.* at 7; Ebenroth aff. § 7. Defendants further assert that Lawler was fully aware of the governing law clause (Article 10.1) and the forum selection clause (Article 10.2) since they immediately preceded the date, place and signature section of the agreement. Defendants also assert that Lawler was reasonably proficient in the German language. Parkin aff. § 5.

Defendants, in the Vollmer affidavit at § 4, the Kreuser affidavit at § 10, the Parkin affidavit at § 9, and the Seymour affidavit at § 6 deny that Schumacher Germany assigned the consultancy agreement to S–S and SFL. Defs.' Mem. in Supp. of Mot. to Dism. for Fail. to Join Indisp. Pty. at 2. Defendants assert that Lawler alleges the assignment only because he must avoid the forum selection clause at all costs and that the obvious way to do this is to sue all available targets *except* the party, Schumacher Germany, which was the signatory to the consultancy agreement. *Id.* at 3.

## II.

Defendants have filed four separate motions in response to plaintiff's Complaint:

1. Defendants' Motion for Injunction and to Stay Discovery and Defendants' First Motion to Dismiss (for Improper Venue)

2. Defendants' Second Motion to Dismiss (for Failure to Join an Indispensable Party)

3. Defendants' Third Motion to Dismiss (for Lack of Personal Jurisdiction)

4. Defendants SFL's, von Fersen's, and Kreuser's Joint Motion to Dismiss for Improper Service and Insufficiency of Service of Process and/or to Quash Service of Process on the non-U.S. Citizen Defendants

Because the Court will grant defendants' First Motion to Dismiss (for Improper Venue), discussion of the remaining three motions will be omitted.

## III.

All defendants challenge the selection by Lawler of this Court based on the forum selection clause specified in the consultancy agreement. That agreement states that venue is in the courts of Crailsheim, Germany. This motion by defendants has generated the most heated controversy of all the issues in this case and the most profuse outpouring of alleged facts and alleged legal authority. Without restating all the arguments, the following recapitulation is set forth:

1. Defendants argue that the written consultancy agreement is dispositive.

2. Lawler counters that the defendants procured the agreement by fraud.

3. Lawler contends that defendants enjoyed unequal bargaining power and engaged in overreaching behavior.

4. Lawler contends that the extra-contractual counts are not covered by the forum selection clause. The parties' experts disagree on the proper interpretation of the forum selection clause.

5. Defendants argue that Lawler has changed his story and has, himself, breached the consultancy agreement.

6. Defendants maintain that Lawler's *forum non conveniens* argument should be given no weight for both factual and legal reasons.

*1. Defendants argue that the written consultancy agreement is dispositive.*

Defendants assert that the brevity of the agreement and the prominent positioning of the forum selection clause immediately above the signatures space should have alerted any reasonably experienced international businessman (which they allege Lawler to have been) to that clause. Defendants further argue that even though the agreement was written in German, an English translation had been provided to him, and that, moreover, the issue of the forum selection had

been the subject of negotiation for months prior to the actual October 12, 1988 signing, and therefore, Lawler had more than ample notice of this clause. In essence, defendants are saying "He knew it was there, he knew its significance, he signed anyway, he is thus estopped to contest it."

2. *Lawler counters that defendants procured the agreement by fraud.*

Lawler conceded during oral argument that he had effective notice of the forum selection clause. However, his primary argument is that defendants von Fersen and Kreuser verbally assured him that, the written agreement notwithstanding, all of his demands, *including his choice of U.S. law and U.S. courts* would be honored. He alleges that Kreuser stated: "I'm your friend, you know I would not hurt you. You can trust Mr. von Fersen." He alleges that von Fersen then said: "Take our word and sign; further negotiation is foreclosed."

Lawler aff. § 29.

Defendants argue that Lawler is estopped from asserting a fraud theory because he failed in his Complaint to allege with sufficient particularity the fraudulent procurement of the forum selection clause itself. Defendants assert that Lawler alleged fraud only generally, referring only to the entire agreement. They point out:

> [The fraud exception] does not mean that anytime a dispute arising out of a transaction is based upon an allegation of fraud ... the 'forum selection' clause is unenforceable. Rather it means that ... [a] forum selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion.

Defs.' Repl. to Pl.'s Br. in Opp'n at 7 (citing *Scherk v. Alberto–Culver Co.*)[1]

To argue that the forum selection clause itself was the result of fraudulent procure-

ment, defendants assert that Lawler must have so pleaded. They assert that Lawler's Complaint was deficient in this regard. Plaintiff counters that § 40 of the Complaint meets this requirement. This section of the Complaint is the subject of further discussion at section 5, *infra.*

3. *Lawler contends that defendants enjoyed unequal bargaining power and engaged in overreaching behavior.*

Lawler asserts that at the time of the October 12, 1988 signing, he was owed some $30,000 by Schumacher Germany, and he believed that he would never collect his money unless he went through with the contract. On this point, the parties engage in a spirited debate involving three principal cases, *The Bremen v. Zapata Off–Shore Co.,*[2] *Carnival Cruise Lines, Inc. v. Shute,*[3] and *Yoder v. Heinhold Commodities, Inc.*[4] The oldest of these cases, *Zapata,* holds that forum selection clauses may be invalidated for overreaching.

> [A forum selection clause should be enforced unless the resisting party can] clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.[5]

*Yoder* was controlling in this District until at least 1991, the year of the U.S. Supreme Court's *Carnival* case. Defendants maintain that *Carnival* has now overturned *Yoder.* The relevant passage from *Yoder* states:

> The Court thus holds that a forum selection clause should not be enforced where a consumer is told by a corporate agent to ignore boilerplate contract language containing a forum selection clause, where there is a material difference in bargaining power, and where the forum designated by the contract has little to do with the transaction and is gravely inconvenient for the parties and witnesses.[6]

---

1. 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2456 n. 14, 41 L.Ed.2d 270 (1974) (emphasis added).

2. 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

3. 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

4. 630 F.Supp. 756 (E.D.Va.1986).

5. 407 U.S. at 15, 92 S.Ct. at 1916.

6. 630 F.Supp. at 760.

*Carnival* involved the enforcement of a forum selection clause printed on the back of a cruise line's passenger ticket. The Supreme Court *assumed* inequality of bargaining position and non-negotiation of the terms by the parties. Despite this, the Supreme Court held that the clause *could* be enforced. Defendants, citing higher authority and a later-in-time decision, contend that the rule of law in *Carnival* should govern in the instant case. It is arguable that the facts in *Carnival* were sufficiently different from those in *Yoder* to make the cases distinguishable. *Carnival* involved large numbers of plaintiff/consumers and a single vendor, located in Florida, who specified a Florida forum for any disputes. By contrast, *Yoder* and the instant case both involve a single plaintiff and a transaction that was factually unique between the parties whereas *Carnival* contemplated thousands of essentially identical transactions entered into by consumers scattered over the entire country. It could thus be argued that non-enforcement of the *Carnival* forum selection clause would have exposed the cruise line owners to litigation in all fifty states. The *Yoder* defendant, as well as defendants here, faced no such exposure. The factual similarity (if Lawler is to be believed) between *Yoder* and the instant case is also interesting (plaintiff told to disregard boilerplate contract language).

4. *Lawler contends that the extra-contractual counts are not covered by the forum selection clause. The parties' experts disagree on the proper interpretation of the forum selection clause.*

Counts II and V of the Complaint deal with breach of agreement and breach of implied duty of good faith and fair dealing, respectively. Lawler asserts that the forum selection clause, at most, could apply to these two counts since they sound in contract and are thus the only counts that could be made subject to a contractual restriction. (The other counts sound in either tort or quasi-contract.) To support his contention, Lawler relies on the opinion of Dr. Wolfgang Bosch, a Stuttgart attorney and author of several works dealing with arbitration in Germany and Switzerland. Dr. Bosch concludes that the forum selection clause is too vague and undefined to apply to Lawler's non-contract claims, i.e. counts I, III, IV and VI.

Defendants counter with *their* expert, Professor Dr. Carsten Ebenroth, a German judge and law professor (and prolific author). Dr. Ebenroth concludes that the clause, under German law, confers "exclusive jurisdiction" on the Crailsheim courts for all disputes "arising under the Agreement." Defs.' Rep. to Pl.'s Br. in Opp'n at 21–22.

5. *Defendants argue that Lawler has changed his story and has, himself, breached the consultancy agreement.*

Section 40 of the Complaint reads:

On information and belief, Kreuser and von Fersen inserted terms in the German Language Agreement signed by Lawler in October 1988 which were not disclosed to him at its making and which they intended would operate to hinder and prevent Lawler from seeking and obtaining judicial relief in the event he discovered their fraud and deceit.

Complaint § 40.

In Lawler's Brief in Opposition, he repeats *this allegation but substitutes an ellipse* ( . . . ) for the words "which were not disclosed to him at its making and". Pl.'s Br. in Opp'n at 52. Defendants' Reply to Plaintiff's Brief in Opposition at 7–11, alleges Lawler's "sleight of hand" *Id.* at 10, and Lawler's attempt to "utiliz[e] his Brief to amend his Complaint!" *Id.* at 9. Defendants then rhetorically ask which Lawler is the real Lawler. *Id.* at 10.

Not content to rest on this exposé, defendants subsequently in their Reply to Plaintiff's Brief in Opposition accuse *Lawler* of breach of agreement. Since Lawler's assertions in section 40 of the Complaint and the edited version in his Brief in Opposition rely on von Fersen's and Kreuser's oral assurances, defendants charge that Lawler breached section 9.1 of the agreement (no oral side agreements) by relying on these assurances and must therefore be tried in Crailsheim for this breach. Defs.' Rep. to Pl.'s Br. in Opp'n at 25.

6. *Defendants maintain that Lawler's forum non conveniens argument should be given no weight for both factual and legal reasons.*

Lawler, in his Brief in Opposition, section IV.C., catalogues an extensive list of reasons why the U.S. forum would be more convenient than Crailsheim, Germany. Defendants respond that they could present a similar story favoring German venue, but assert that reliance on such an emotional appeal is unnecessary since the legal issue of *forum non conveniens* was dispositively decided in *Zapata*. In that case, the U.S. Supreme Court, according to defendants, held that a *forum non conveniens* analysis was "inappropriate in the presence of a valid forum selection clause." Defs.' Supp. App. at 21. This conclusion probably imputes too much to the *Zapata* court, but it is clear that the Court favored forum selection clauses unless enforcement is "unreasonable under the circumstances." [7]

### IV.

■ The first and probably dispositive consideration is whether the parties should be bound by their written contract or whether, on the other hand, the contract may be vitiated because of fraud or overreaching by the defendants. The Court is persuaded that the allegation of fraud is misdirected. "[A] forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion." [8] The fact that Crailsheim, Germany was the forum designated after months of negotiation between the parties, may be a source of irritation to Lawler, but does not rise to the level of fraud. Similarly, defendants' conduct in this regard cannot, in the final analysis, be characterized as overreaching. Lawler is an experienced international businessman. His previously negotiated consultancy agreement with the Seitz company designated the U.S. as the adjudicating forum in the event of a dispute. He furnished defendants with his Seitz agree-

ment to use as a "template." It is plain that Lawler fully knew the import of the forum selection clause and his acceptance of the Crailsheim forum in the written contract must be viewed as that of an informed person, one aware of the possible consequences.

■ Lawler's protestations of incapacity in the German language are unpersuasive.

[I]t is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them.... Nor does the fact that the rules were in German preclude enforcement of the contract. In fact, a blind or illiterate party (or simply one unfamiliar with the contract language) who signs the contract without learning of its contents would be bound. Mere ignorance will not relieve a party of her obligations and she will be bound by the terms of the agreement. [9]

Lawler admits that Kreuser faxed him an English language translation of the consultancy agreement on September 26, 1988. Lawler aff. ¶ 26. The agreement was executed on October 12, 1988. Oldfield aff. at 047. Thus, Lawler had an English translation of the contract for some two weeks prior to the time he actually signed it. Finally, counsel for Lawler admitted during oral argument that Lawler knew what he was signing. In view of all of these circumstances, the Court cannot accept an argument that Lawler's execution of the contract was procured by defendants' fraud or overreaching.

■ Lawler contends that the forum selection clause, at most, applies to counts II and V of the Complaint since they are the only ones sounding in contract, and hence the only ones subject to a contractual restriction. By this reasoning, counts II and V should be severed from the rest of the Complaint and dismissed, presumably to be refiled in the German courts, while counts I, III, IV and VI would remain to be litigated in this Court. As previously noted, the parties' experts dis-

---

7. 407 U.S. at 10, 92 S.Ct. at 1913.

8. *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2456 n. 14, 41 L.Ed.2d 270 (1974) (citation omitted).

9. *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir.1992) (citations omitted).

agree as to the sweep of the forum selection clause. Plaintiff's expert asserts that the clause is too vague to encompass the non-contract claims while defendants' expert maintains that the clause confers jurisdiction on the Crailsheim court for all claims.

This issue was addressed in a recent ruling by the First Circuit:

Lambert asserts, finally, that even if the district court properly dismissed the *contract* claims under Rule 12(b)(6), the contract-related tort claims were not directly covered by the forum selection clause.... We cannot accept the invitation to reward attempts to evade enforcement of forum selection agreements through "artful pleading of [tort] claims" in the context of a contract dispute....

The better general rule, we think, is that contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.[10]

This Court finds the rule adopted by the First Circuit to be sound. All of plaintiff's claims stem from the same operative facts. We decline the invitation to sever the non-contract counts from the two sounding in contract.

 Plaintiff's contention that adjudication in the German courts is essentially unfair to him is not persuasive.

[I]n the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside.... The correct approach would have been to enforce the forum clause specifically Unless Zapata could clearly show that enforcement would be unreasonable and unjust....[11]

Both plaintiff and defendants are part of the "expanding international trade" that is a fact of modern commercial life. The defendant corporations are part of a parent multinational corporation. Plaintiff Lawler had been active in international business dealings for years prior to his association with Schumacher. Lawler aff. ¶ 2. The consultancy agreement itself contained numerous references to the international scope of Lawler's and Schumacher's anticipated performance.

Schumacher is interested in cooperation with and consulting by Lawler in both the establishment of the U.S. marketing organization and the worldwide expansion of liquid filtration.

Consultancy Agreement at 3, Intro.

Assistance in the establishment of a marketing corporation in the U.S.

Consultancy Agreement ¶ 1.1.

Liquid filter and membrane filter business in Crailsheim [Germany]/Sheffield [U.K.].

Consultancy Agreement ¶ 1.2.

Marketing assistance in Europe.

Consultancy Agreement ¶ 1.2.

Clearly, the agreement executed by the parties anticipated worldwide performance. Therefore, their freely negotiated choice of forum should be enforced.

There is strong evidence that the clause was a vital part of the agreement, and it would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum clause figuring prominently in their calculations. Under these circumstances ... "[t]he force of an agreement for litigation in this country, freely entered into between two competent parties, seems to me to be very powerful." [12]

Also because the parties were sophisticated in the ways of international business, plaintiff's reliance on an alleged oral side agreement (itself prohibited by the terms of the written contract), does not strike the Court as being reasonable.

The parties to the contract are both sophisticated businesses engaged in interna-

10. *Lambert v. Kysar,* 983 F.2d 1110, 1121–22 (1st Cir.1993) (citations omitted).

11. *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972).

12. *Zapata,* 407 U.S. at 14, 92 S.Ct. at 1915.

tional commerce, and Paper Express's purported reliance on an oral explanation contrary to the ordinary meaning of its own purchase order and of the rules to which its order referred would be unreasonable.[13]

■ Plaintiff Lawler has not carried his burden of demonstrating that dismissal of his claims by this Court would force him to abandon the litigation and to thus lose his day in court. Lawler has stated that the expense of transporting witnesses to Germany and housing them there for some indeterminate period of time would be too costly for him to bear. Lawler has filed no financial statement with the Court and his contention is thus impossible to assess. That, however, is not a concern properly before this Court in the first instance. The contract itself presumably compensated Lawler for his expenses, both those known and those which could reasonably have been anticipated.

Finally, Paper Express argues that the forum-selection clause is unreasonable and unenforceable because as a practical matter it would be inconvenient and costly to litigate in Germany. In addition, Paper Express contends that it would be nearly impossible to proceed with its suit in Germany because the witnesses and evidence are located in Illinois. The *Bremen* court held that an otherwise valid forum-selection clause may be unreasonable and unenforceable if the chosen forum is significantly inconvenient for trial. However, the *Bremen* court also held that the party seeking to escape the contract must demonstrate that "the forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." But additional expense does not necessarily invalidate a forum-selection clause since Paper Express was presumably compensated for this burden by way of the consideration it received under the contract.[14]

*Zapata* (*Bremen*), the governing law in this case, is now over twenty years old and has been upheld by the U.S. Supreme Court

as recently as 1991 in *Carnival.* The essence of *Zapata* is its commandment to enforce forum selection clauses unless "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." [15] For the reasons discussed, there was no fraud or over-reaching in this case and enforcement would be neither unreasonable nor unjust. Accordingly, defendants' First Motion to Dismiss (for Improper Venue) will be granted.

## V.

■ Defendants have moved this Court to grant an injunction pursuant to Rule 65 permanently barring plaintiff from further prosecution of this action in any court other than those located in Crailsheim, Germany. Plaintiff speculates that this is so arranged as to give the appearance of an appealable order under 28 U.S.C. § 1292(a)(1) in case the Court denies the motion. Plaintiff notes, however, that the Supreme Court has held that a District Court's denial of a motion to dismiss based on a forum selection clause argument is not an appealable order.[16]

Whatever defendants' motivation for seeking injunctive relief, the Court is not favorably inclined to their request.

Since an injunction is regarded as an extraordinary remedy, it is not granted routinely; indeed, the court usually will refuse to exercise its equity jurisdiction unless the right to relief is clear.... [H]istorically, and even today, the main prerequisite to obtaining injunctive relief is a finding that plaintiff is being threatened by some injury for which *he has no adequate legal remedy.*

11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2942 (1973) (emphasis added).

This Court will provide the legal relief sought by the defendants, dismissal due to improper venue. Further relief in the form of an injunction is not warranted and will be denied.

13. *Paper Express,* 972 F.2d at 758.

14. *Id.* (citations omitted).

15. *Zapata,* 407 U.S. at 15, 92 S.Ct. at 1916.

16. *Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989).

## ORDER

This matter is before the Court on defendants Schumacher Filters America, Inc.'s, *et al.* Motion for Injunction and Motions to Dismiss (for Improper Venue, for Failure to Join an Indispensable Party and for Lack of Personal Jurisdiction). Defendants Schumacher Filters, Limited, Claus von Fersen and Claus Kreuser jointly filed a Motion to Dismiss for Improper Service and Insufficiency of Service of Process or, in the alternative, to Quash Service of Process on the non-U.S. Citizen Defendants.

For the reasons set forth in the accompanying Memorandum Opinion, defendants' Motion to Dismiss (for Improper Venue) is hereby GRANTED. Having granted this motion, it is not necessary to reach defendants other Motions to Dismiss. Defendants Motion for Injunction is hereby DENIED.

And it is SO ORDERED.