**Lawrence J. KILGALLEN d/b/a LJK Software, Inc., Plaintiff,**

v.

**NETWORK SOLUTIONS, INC., Defendant.**

**No. Civ. A. 00–10334–PBS.**

United States District Court, D. Massachusetts.

May 31, 2000.

---

Esther J. Horwich, Boston, MA, for Lawrence J. Kilgallen dba LJK Software, Inc., plaintiff.

John F. Hurley, Jr., MacCarthy, Pojani & Hurley, Worcester, MA, for Network Solutions, Inc., defendant.

A. David Mazzone, United States District Court, Boston, MA, for A. David Mazzone, ADR provider.

### MEMORANDUM AND ORDER

SARIS, District Judge.

### I. Introduction

This case involves a dispute over the re-registration of an internet domain name, LJK.com. Plaintiff, Lawrence J. Kilgallen d/b/a LJK Software, claims that the defendant, Network Solutions, Inc. ("Network Solutions" or "NSI"), committed a breach of contract when it transferred the domain name to a third person. Network Solutions claims that plaintiff was the first to violate the contract by failing to make the annual payment necessary to re-register the site. As it turns out, plaintiff mailed a check for the registration fee, but defendant mistakenly posted the payment to another account. Despite nearly a dozen letters from plaintiff indicating that defendant had already received payment, defendant transferred the site to someone else.

This dispute has prompted a barrage of motions. Plaintiff originally filed the complaint in the Massachusetts Superior Court. Defendant removed, invoking the Court's diversity jurisdiction. Plaintiff filed a motion for a preliminary injunction ordering NSI to honor its contract and to reinstate its LJK.com domain name. Defendant filed a motion to dismiss for improper venue on the ground that the registration agreement contains a forum selection clause that provides for the exclusive jurisdiction of contract disputes in the Eastern District of Virginia. Plaintiff filed a motion for sanctions claiming that defendant knowingly filed false affidavits. After two hearings,[1] multiple pleadings and a failed mediation, plaintiff has now dropped two claims and moved to remand the case to state court arguing that the amount in controversy no longer exceeds $75,000.

For the reasons stated herein, I *DENY* plaintiff's motion for sanctions and *TRANSFER* the action to the Eastern District of Virginia. Because another court must fully address this prickly dispute, I decline to write a lengthy decision, but instead briefly outline my reasons below.

### II. Factual Background

The record indicates the following facts:

The plaintiff is the owner of LJK Software, a sole proprietorship that is located in Cambridge, Massachusetts. Since 1993, the defendant has been under contract with the National Science Foundation to be the sole registrar of internet domain names. The defendant's principal place of business is in Herndon, Virginia.

In early 1994, plaintiff hired Robert Tinkleman, of Tinkleman Enterprises,[2] to register a domain name for use by plaintiff's software business. Tinkleman completed an electronic application with the defendant. The application required only that

---

1. The third party who registered the LJK.com was notified of the hearings but did not seek to intervene.

2. In December, 1998, Tinkleman Enterprises was purchased by Verio, Inc.

he provide some general contact information. It did not require him to sign a registration agreement on behalf of the plaintiff. The registration form contained no provisions prohibiting lawsuits from being brought outside Virginia. On February 24, 1994, defendant assigned plaintiff the domain name LJK.com.

After the initial two-year registration period, domain names must be renewed annually. On January 6, 1999, defendant e-mailed a lengthy notice to plaintiff indicating that he would soon receive an invoice for his annual registration fee. The subject line of the e-mail was "Modify Registration LJK.COM." Kilgallen recalls receiving this notice, but states that he only skimmed the portion of the message that appeared on the screen without scrolling down to view the entire message. He did not see the section headed, "DOMAIN NAME REGISTRATION AGREEMENT." Paragraph P of that agreement states:

> Governing Law. Registrant agrees that this Registration Agreement shall be governed in all respects by and construed in accordance with the laws of the Commonwealth of Virginia, United States of America. By submitting this Registration Agreement, Registrant consents to the exclusive jurisdiction and venue of the United States District Court for the Eastern District of Virginia, Alexandria Division. If there is no jurisdiction in the United States District Court for the Eastern District of Virginia, Alexandria Division, then jurisdiction shall be in the Circuit Court of Fairfax County, Fairfax, Virginia.

**3.** It is not certain why plaintiff did not receive the copy. The most likely reason is that NSI incorrectly mailed it to Tinkleman. Defendant's e-mail dated March 19, 1999 to LJK is addressed to him, and designates him incorrectly as the billing contact at a New York address. Typically, Tinkleman ignored misdirected invoices. Enclosed with every paper invoice is a form transmittal letter which con-

(Dep. of Lawrence Kilgallen Exh. 4.) Plaintiff states that he was never aware of this provision.

On February 11, 1999, plaintiff received an e-mail invoice for the $35.00 renewal fee. Neither party retained a copy of that invoice, but defendant filed a copy of the form that its billing system used to generate plaintiff's invoice. It states, "In making payment for the invoice below, Registrant agrees to the terms and condition of the current Domain Registration Agreement." (John P. Hornak Aff.Exh. D.) It also lists payment options. For customers that decide to pay by check, the form states, "Please use the remittance stub from the hard copy invoice you should receive shortly. If you do not receive a hard copy invoice within 7 days, please call us at (703) 742–4777." (*Id.*) NSI's records indicate it sent plaintiff the hard copy invoice on February 1, 1999. However, plaintiff never received the hard copy and did not call NSI to report the delay.[3]

On February 15, 1999, plaintiff sent a check for the full amount of the renewal fee to the defendant. However, Kilgallen mistakenly sent the check to NSI's headquarters in Herndon, Virginia. (Kilgallen Dep. at 65–66.) That office had been the proper billing address for the 1998 renewal payment, but in 1998 NSI moved its billing operations to an office in Baltimore, Maryland. The Herndon office returned the check, uncashed, to plaintiff. After speaking to representatives at NSI, Kilgallen resent the same check to the correct address.

Unfortunately for plaintiff, his problems did not end once he discovered the proper address. Because plaintiff never received the hard copy invoice, he was not able to

tains on its reverse side the standard terms and conditions for re-registration. The paper invoice also states: "By this payment, Registrant agrees to the terms and conditions of the current Domain Name Registration Agreement." In 1998, plaintiff received the re-registration agreement which included the forum selection clause.

include the computer readable remittance stub with his check. He also did not reference the invoice number on the check. However, he did write "LJK.com thru 26–Feb–2000" on the check's memo line.

Defendant received the check on March 22, 1999, but mistakenly posted it to another account. NSI uses invoice numbers to match checks to accounts. Plaintiff's check was attached to a bank stub that indicated his checking account number, UST 88 8 1045051. An NSI billing clerk matched that number to invoice number 1045051 and posted the payment to the invoice for the renewal of the domain name SEXYMIAMI.COM.

In late March or early April, NSI sent plaintiff a deactivation notice indicating that it had not received the renewal fee and that his domain name registration would be terminated in ten days unless NSI received payment. On April 2, 1999, plaintiff replied stating that NSI had already received and cashed a check covering the full fee. He also requested written confirmation that his account was up to date. Several days later, plaintiff received another deactivation notice. Over the next six months, plaintiff sent NSI over a dozen letters, e-mails, and facsimiles indicating that NSI received his payment on March 22, 1999 and requesting confirmation. Plaintiff sent *three* copies of the cancelled check.

On November 10, 1999, NSI deactivated LJK.com, rendering it inactive on the internet. On December 12, 1999, it terminated the registration making the name available to the public. Six days later, LJK.com was registered to another subscriber, a Hagop Doumanian in Las Vegas.

On January 12, 2000, defendant mailed plaintiff a $35.00 refund check.

### III. *Discussion*

#### A. *The Contract*

■ The threshold issue is whether the parties entered into a contract for the registration of the LJK.com domain name. There is no dispute that defendant made an offer to provide these services or that plaintiff attempted to accept defendant's offer by mailing a check for the registration fee. However, there is a dispute whether plaintiff's acceptance was valid. Defendant contends that it was not valid because it did not comply with the manner of acceptance outlined in the "General Instructions" section of the electronic invoice, which asked customers paying by check to wait for a hard copy invoice and to mail the check along with the detachable remittance stub.[4]

Although plaintiff did not strictly comply with the terms of acceptance that were outlined in the electronic invoice, his acceptance was valid. According to the Restatement (Second) of Contracts § 60 (1979):

> If an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract. If an offer merely suggests a permitted place, time or manner of acceptance, another method of acceptance is not precluded.

*Cf.* U.C.C. § 2–206(1)(a) ("Unless otherwise unambiguously indicated . . . an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances . . . ."). The electronic invoice's general instructions did ask registrants

---

4. The invoice stated:
GENERAL INSTRUCTIONS
This will be the only invoice sent via e-mail. In a few days, you should receive a hard copy invoice via postal service to the above street address. If you wish to pay by check, please wait for the hard copy invoice. It contains a scannable remittance stub and return envelope. To avoid delays in processing your payment DO NOT send a check to us with this e-mail invoice.
To Pay by Check:
Please use the remittance stub from the hard copy invoice you should receive shortly. If you do not receive a hard copy invoice within 7 days, please call us at (703) 742–4777.
(Hornak Aff.Exh. D.)

paying by check to include a paper remittance stub with their check, but it did not state that a check received without an invoice stub would be rejected. I, therefore, conclude that the offer did not preclude plaintiff from accepting the offer by mailing a check with "LJK.com thru 26–Feb–2000" written on the memo line. *See McAfee v. Brewer*, 214 Va. 579, 203 S.E.2d 129, 131 (1974) (finding valid acceptance where the defendant did not sign and return a copy of the contract as plaintiff's offer requested because the contract did not state that the failure to do so would nullify the offer). Moreover, even if the acceptance terms were mandatory, plaintiff's defective acceptance constituted a counteroffer that defendant accepted by cashing the check. *See Houston Dairy, Inc. v. John Hancock Mut. Life. Ins. Co.*, 643 F.2d 1185, 1186 (5th Cir.1981) (stating that an untimely acceptance of an offer is a counteroffer that shifts the power of acceptance to the original offeror); Restatement (Second) of Contracts § 70 (1979) ("A ... defective acceptance may be effective as an offer to the original offeror ....."); 2 Williston on Contracts § 6:55, at 668 (4th ed.1991) (same).

Unfortunately for plaintiff, establishing the existence of a contract is a Pyrrhic victory because the contract provides that it is to be governed by Virginia state law and that all disputes with federal subject matter jurisdiction must be litigated in the Eastern District of Virginia.[5] Courts have long enforced forum selection clauses under federal common law and Virginia state law unless an opposing party demonstrates that enforcement is unreasonable. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 ("[Forum selection clauses] are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."); *Paul Business Sys-tems, Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 397 S.E.2d 804, 807–08 (1990) (enforcing a forum selection clause naming New York as the sole forum).

Plaintiff attacks the validity of the clause on three fronts. First, he argues that defendant waived the right to object to venue by not raising the objection in the removal notice. Second, plaintiff contends that enforcement of the clause would be unreasonable because he is a sole proprietor and his business would be adversely affected by his prolonged absence if he must litigate the claim in Virginia. Third, he argues that he was never aware of the clause and did not agree to be bound by it.

None of these arguments is persuasive. A removal notice requires only "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon [the] defendant." 28 U.S.C. § 1446(a). Defendant was under no obligation to raise the forum selection clause in that notice. With respect to the effect of plaintiff's absence on his business, plaintiff has failed to carry his burden of showing that enforcement would be unreasonable.

Finally, plaintiff's pleas that he was not aware of the clause and that he never agreed to be bound by it also miss the mark. Absent fraud, a party to a contract is bound by the terms of the contract whether or not he read them. *See State Farm Mut. Ins. Co. v. Miller*, 194 Va. 589, 74 S.E.2d 145, 149 (1953); *Johnson v. Shaffer*, No. 93–22, 1994 WL 1031192, at *6–7 (Va. Cir. Ct. May 19, 1994). Plaintiff acknowledges receiving an electronic renewal notice that contained a copy of the registration agreement. (Kilgallen Dep. at 68–73.) But, he argues that he never saw the agreement because he did not scroll beyond the information initially shown on his screen. Plaintiff also received, and responded to, an electronic

**5.** If there is no federal subject matter jurisdiction, the dispute must be brought in Virginia state court.

invoice that clearly contained the caveat, "In making payment for the invoice below, Registrant agrees to the terms and conditions of the current Domain Registration Agreement." (Hornak Aff.Exh. D.) These facts do not demonstrate fraud by the defendant, but rather, they show plaintiff's decision to accept defendant's offer without taking the minimal steps necessary to ascertain the terms and conditions of the offer.

For the preceding reasons, I ***TRANS-FER*** this dispute to the United States District Court for the Eastern District of Virginia. Although I have concluded that there is a likelihood of success on the merits in demonstrating that defendant committed a breach of contract, I will leave plaintiff's motion for a preliminary injunction for that court to address.

### B. *Sanctions*

 I also ***DENY*** plaintiff's motion for sanctions. Plaintiff claims that defendant knowingly submitted false affidavits. The most striking example of possible misconduct is exhibit C to the affidavit of John Hornak, which defendant claimed was an example of the hard copy invoice sent to plaintiff. However, it refers to a service agreement that was not effective until well after the invoice was sent to plaintiff. Defendant submitted a supplemental affidavit acknowledging the error and with an example of the correct form. Defendant explained that the error was made by the vendor who generates NSI's invoices. The vendor mistakenly used the current form to print the example instead of the form used in February, 1999. (David Graves Aff. at ¶¶ 9–13.) Although the exhibit is inaccurate, I do not find that it was filed with an intent to mislead.

### C. *Remand*

Plaintiff has also moved to remand the case to state court by dropping the demand for $75,000 in compensatory damages. Regardless of whether the action is in state or federal court, the parties

agreed to Virginia as the forum. The United States District Court for the Eastern District of Virginia must decide whether to retain jurisdiction or remand to the Circuit Court of Fairfax County pursuant to 28 U.S.C. § 1367.

### IV. *Order*

For the reasons herein, plaintiff's motion for sanctions is ***DENIED*** (Docket # 23) and defendant's motion to transfer venue is ***ALLOWED*** (Docket # 6). Although the Court declines to rule on the motion for preliminary injunction to preserve the status quo, the Court orders defendant not to re-register the domain name LJK.com pending resolution of this law suit in Virginia. The Court further orders that a copy of this opinion be sent to Hagop Doumanian, at P.O. Box 80540, Las Vegas, NV 89180–0540.