Bruce G. FORREST, Appellant,

v.

VERIZON COMMUNICATIONS, INC.
and Verizon Internet Services,
Inc., Appellees.

No. 01–CV–1101.

District of Columbia Court of Appeals.

Argued June 18, 2002.

Decided Aug. 29, 2002.

1008

Victoria S. Nugent, with whom Michael D. Hausfeld, Gary E. Mason and Alexander E. Barnett were on the brief, Washington, DC, for appellant.

Guy Miller Struve, with whom Harry T. Jones, Jr., Washington, DC, and Scott W. Muller were on the brief, for appellees.

Before STEADMAN and REID, Associate Judges, and NEWMAN, Senior Judge.

STEADMAN, Associate Judge:

The question in this case is whether a forum selection clause mandating that claims be brought in Virginia should be applied to appellant's purported class action involving consumers' attempts to register for and use Verizon Internet Services, Inc.'s ("VIS") digital subscriber line ("DSL") service. We hold that enforcement of this clause is reasonable and that

all of appellant's claims fall within the scope of the clause. Consequently, we affirm the trial court's order dismissing appellant's suit.

## I.

VIS is a Delaware corporation with its principal place of business in Reston, Fairfax County, Virginia.[1] Among its services are DSL Internet access, which provides access at a much higher speed than dial-up connections. VIS has signed up hundreds of thousands of subscribers, including at one point appellant. He is a District of Columbia resident who is an attorney employed by the Department of Justice.

According to appellant, activating the DSL service involved a period of lengthy delays. Once the service was activated, "customers have experienced frequent and lengthy disruptions in service, and the service has operated at speeds much lower than promised." Appellant himself alleges that he signed up for DSL service in August 2000 and was promised activation would occur on August 14, 2000. However, he never actually received the service on that date or afterwards and finally canceled the service in December 2000.

Subsequently, appellant[2] filed a purported class action[3] in District of Columbia Superior Court alleging breach of contract, negligent misrepresentation, and violation of Virginia's consumer protection laws.[4] VIS responded with a motion to dismiss based upon a forum selection clause in the Verizon Internet Services Access Agreement ("Agreement") that provided that subscribers to the DSL service "consent to the exclusive personal jurisdiction of and venue in a court of competent jurisdiction located in Fairfax County, Virginia."[5] The trial court, after carefully analyzing the parties' contentions, issued an order granting the motion to dismiss. Appellant filed a timely appeal. The trial court's interpretation of the forum selection clause, a contractual provision, is subject to de novo review. See Terra Int'l v. Mississippi Chem. Corp., 119 F.3d 688, 692 (8th Cir.), cert. denied, 522 U.S. 1029, 118 S.Ct. 629, 139 L.Ed.2d 609 (1997).

## II.

In this case we address, apparently for the first time, the validity of a forum selection clause in the District of Columbia courts.[6] Historically, such clauses were

---

1. VIS was the contracting party with appellant. Verizon Communications, Inc., ("VCI") was named as an added defendant on the allegation that VIS was its wholly-owned subsidiary. Since any liability of VCI is wholly derivative, we address the suit only in terms of VIS.

2. Four other named plaintiffs joined appellant's suit, but only appellant appealed from the trial court's order.

3. The class, "[a]ll persons and entities throughout the United States who have entered into a Verizon Internet Services Access Agreement with [VIS] or otherwise signed up for Verizon DSL Internet Access Service with the intent of entering into a Verizon Internet Services Access Agreement," was never certified, given the trial court's dismissal of the complaint.

4. Appellant's statutory claims were based on VA.CODE ANN. § 18.2–216 (2002) (false advertising) and VA.CODE ANN. § 59.1–200 (Virginia Consumer Protection Act) ("VCPA").

5. VIS also sought to dismiss the suit on forum non conveniens grounds, an argument the trial court found unnecessary to reach.

6. In the only District of Columbia case we have found that addressed forum selection clauses, we held that a trial court had properly dismissed a complaint on the grounds of forum non conveniens in part because the court had relied upon the contracts' forum selection clauses. Sonneville v. Stedef, Inc., 449 A.2d 1087, 1089 (D.C.1982) (per curiam). However, the plaintiff in Sonneville apparently did not challenge the validity of the forum selection clauses.

not favored by American courts. However, in the past three decades, commencing with the Supreme Court's influential decision in *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), jurisprudence has sharply shifted; "such clauses are [now] prima facie valid and [will] be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10, 92 S.Ct. 1907; *see also Professional Ins. Corp. v. Sutherland*, 700 So.2d 347, 350 n. 3 (Ala.1997) (listing jurisdictions where clauses are presumptively valid); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 80 (1988) ("The parties' agreement as to the place of the action will be given effect unless it is unfair or unreasonable."). We concur with these authorities and adopt the modern rule for the District of Columbia as well.

The question before us, then, is whether appellant has shown that enforcement of the clause in the Agreement is "unreasonable under the circumstances."

### A.

■ First, "[a]s a threshold matter, the validity of a forum selection clause ... depends on whether the existence of the clause was reasonably communicated to the plaintiff." *O'Brien v. Okemo Mt.*, 17 F.Supp.2d 98, 103 (D.Conn.1998). Appellant argues that VIS "did not provide ... adequate notice of the clause or its significance."

■ To become DSL subscribers, customers must agree to all the terms of the Agreement, including the forum selection clause. The clause is found in the final section of the main text of the Agreement, which, when printed out, totals thirteen pages (including two lengthy appendices). Many consumers, though, presumably read the Agreement in a scroll box on their computer monitors, where only a small portion of the document is visible at any one time. The contract is entered into by the subscriber clicking an "Accept" button below the scroll box. At the very top of the Agreement it states: "PLEASE READ THE FOLLOWING AGREEMENT CAREFULLY."

The clause is part of the final section 14 entitled "General Provisions" and is found within the following paragraph:

14.7 You and VIS agree that this Agreement shall be interpreted in accordance with the substantive laws of the Commonwealth of Virginia, without reference to its principles of conflicts of laws. You and VIS consent to the exclusive personal jurisdiction of and venue in a court of competent jurisdiction located in Fairfax County, Virginia. Any cause of action or claim you may have with respect to the Service must be commenced within one (1) year after the claim or cause of action arises or such claim or cause of action is barred.

Unlike two other textual provisions, the clause is not in capital letters; otherwise its type size and appearance are consistent with the agreement as a whole.

■ We agree with the trial court that appellant was provided adequate notice of the forum selection clause. "The general rule is that absent fraud or mistake, one who signs a contract is bound by a contract which he has an opportunity to read whether he does so or not." *Nickens v. Labor Agency of Metro. Washington*, 600 A.2d 813, 817 n. 2 (D.C.1991). *See also Pers Travel, Inc. v. Canal Square Associates*, 804 A.2d 1108, 1111 (D.C.2002) (waiver of right to trial by jury). In reading through the Agreement before it was accepted, appellant (and other consumers) would have inevitably discovered the forum selection clause. We are not persuaded that notice would have been sufficient only if the clause was in all capital letters or was placed in the section entitled "Limitations of Liability and Remedies" rather

than "General Provisions." *See Vitricon, Inc. v. Midwest Elastomers, Inc.*, 148 F.Supp.2d 245, 247 (E.D.N.Y.2001) ("fine print" acceptable for forum selection clause); *Caspi v. Microsoft Network, L.L.C.*, 323 N.J.Super. 118, 732 A.2d 528, 532 (App.Div.1999). *But see Oxman v. Amoroso*, 172 Misc.2d 773, 659 N.Y.S.2d 963, 967 (N.Y.City Ct.1997). Neither is the use of a "scroll box" in the electronic version that displays only part of the Agreement at any one time inimical to the provision of adequate notice. *See Kilgallen v. Network Solutions, Inc.*, 99 F.Supp.2d 125, 129–30 (D.Mass.2000); *Caspi, supra*, 732 A.2d at 532. (Tellingly, appellant makes no argument that the choice of law provision, which his complaint relies upon, should not be enforced due to inadequate notice despite its sharing the same "defects" as the forum selection clause.) A contract is no less a contract simply because it is entered into via a computer.

■ Appellant also contends that notice was improper because VIS did not highlight the significance of vesting exclusive jurisdiction in Virginia. Specifically, the Agreement gave no hint that Virginia is one of only two states that lacks a class

action procedure similar to Super. Ct. Civ. R. 23 & 23–I. *See* H. Newberg, *Newberg on Class Actions* § 13, Appendices 13–1, 13–2 (3rd ed.1992).[7] Of course, every jurisdiction's laws differ to some degree, and appellant concedes that VIS did not have "an obligation to inform its customers of every procedural nuance of Virginia law." But, according to appellant, VIS must provide notice when consumers are waiving a possible "remedy," class actions, by agreeing to a forum selection clause. We fail to see, however, why the absence of one particular remedy in a foreign jurisdiction should be elevated beyond all other possible jurisprudential consequences of a forum selection clause.[8] *Cf. Interamerican Trade v. Companhia Fabricadora de Pecas*, 973 F.2d 487, 489 (6th Cir.1992) (enforcing forum selection clause even though forum (Brazil) has no trial by jury or trial by deposition and plaintiff would be required to deposit $2.2 million as security).

## B.

■ Given that the clause was reasonably communicated, we turn next to appellant's contention that enforcement of the clause would be unreasonable.[9] Appellant

7. "Unless specifically allowed by statute, class action relief is not generally available in Virginia in actions at law." *America Online, Inc. v. Superior Court*, 90 Cal.App.4th 1, 108 Cal. Rptr.2d 699, 711 (2001).

8. Appellant's related argument that a class action is the only practical remedy in his situation is addressed in the following section.

9. Appellant contends that in determining reasonableness this court should apply heightened scrutiny, because the clause was part of a standard form contract and not the product of arms-length negotiations. However, in *Carnival Cruise Lines, Inc. v. Shute*, the Supreme Court overturned the Ninth Circuit's automatic rejection of a form contract's forum selection clause. 499 U.S. 585, 593, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). The

Court did state that "forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness." *Id.* at 595, 111 S.Ct. 1522. Appellant has interpreted this passage as mandating heightened judicial scrutiny for standard form contract forum selection clauses. However, this language may just as easily be construed as reiterating the *Bremen's* court admonition that no forum selection clause, no matter how negotiated, may be "unreasonable [or] unjust." 407 U.S. at 15, 92 S.Ct. 1907. Subsequent to *Carnival Cruise Lines* a difference of opinion appears to have arisen among lower courts on this question. *Compare Mellon First United Leasing v. Hansen*, 301 Ill.App.3d 1041, 235 Ill.Dec. 508, 705 N.E.2d 121, 125 (1998) (heightened scrutiny required) *with Lambert v. Kysar*, 983 F.2d 1110, 1119–20 (1st Cir.1993) (no heightened scrutiny). But even

must demonstrate "(i) [the clause] was induced by fraud or overreaching, (ii) the contractually selected forum is so unfair and inconvenient as, for all practical purposes, to deprive the plaintiff of a remedy or of its day in court, or (iii) enforcement would contravene a strong public policy of the [forum] where the action is filed." *Gilman v. Wheat, First Securities, Inc.*, 345 Md. 361, 692 A.2d 454, 463 (1997); *see also Bremen, supra,* 407 U.S. at 15–16, 92 S.Ct. 1907.

■ Appellant contends that he would be deprived of his day in court because of his inability to file a class action in Virginia. According to appellant, each person's damages are likely to be so small that the cost of litigating an individual claim in Virginia would exceed the claim's potential value. Only through a class action, appellant argues, will customers such as himself have a viable option for seeking relief from VIS' alleged misconduct.

Jurisdictions have split as to whether the unavailability of a class action mechanism would in itself make a forum selection clause unenforceable.[10] The one court that we are aware of that has refused to enforce a clause in such circumstances based its decision in the main on particular California statutory consumer protections. *See Superior Court, supra,* note 7, 108 Cal.Rptr.2d at 710–13.[11] On the other

hand, courts that have upheld the clauses have emphasized that remedies were still available to the individual plaintiffs. *See Koch v. America Online, Inc.,* 139 F.Supp.2d 690, 695 (D.Md.2000); *Gilman, supra,* 692 A.2d at 464; *America Online, Inc. v. Booker,* 781 So.2d 423, 425 (Fla.Ct. App.2001).

Like the trial court, we believe the latter position is more persuasive. Even if the forum selection clause is enforced, appellant can still have his day in court. To begin with, Virginia has a system of small claims courts. *See* Va.Code Ann. § 16.1– 122.1 *et seq.* Furthermore, his complaint also seeks "reasonable attorneys' fees and court costs" under the Virginia Consumer Protection Act. Indeed, we note in passing that it has been said that "[t]he unreasonableness exception to the enforcement of a forum selection clause refers to the inconvenience of the chosen forum as a place for trial, not to the effect of applying the law of the chosen forum." *General Electric Co. v. G. Siempelkamp GmbH & Co.,* 809 F.Supp. 1306, 1314 (S.D.Ohio 1993), *aff'd,* 29 F.3d 1095 (6th Cir.1994). It is particularly telling that, like the plaintiffs in *Koch* and *Gilman,*[12] appellant need only cross the Potomac River to litigate his claims in neighboring Virginia. There is nothing sinister, much less unreasonable, in VIS's choice of Fairfax County as the forum for litigating disputes, where its principal place of business is located.[13] Appellant's

---

if we were to apply heightened scrutiny here, the outcome would not differ.

**10.** The modern history of class actions began only with the adoption of the original Federal Rule of Civil Procedure 23 in 1938. *See* Newberg, *supra,* § 1.09.

**11.** Appellant has not demonstrated to us a statutory-based comparably strong District public policy against the enforcement of a Virginia forum selection clause. *See Carl v. Children's Hospital,* 702 A.2d 159, 162–65 (D.C.1997) (en banc).

**12.** The Maryland Court of Appeals' decision in *Gilman* is "an especially persuasive author-

ity when the District's common law is silent." *Napoleon v. Heard,* 455 A.2d 901, 903 (D.C. 1983).

**13.** "The rationale most often used to support application of the modern rule [enforcing forum selection clauses] is that it comports with traditional concepts of freedom of contract and recognizes the present nationwide and worldwide scope of business relations which generate potential multi-jurisdictional litigation." *Paul Business Systems, Inc. v. Canon U.S.A., Inc.,* 240 Va. 337, 397 S.E.2d 804, 807 (1990).

class action argument is in reality a complaint against the effect of applying Virginia law and we see no basis to unilaterally condemn in this regard the legal system of our neighboring state. We conclude that the trial court did not err in declining to hold the clause was unreasonable.

### C.

■ Appellant also contends that the clause should not be enforced because damages accrued before he entered into the Agreement. *See Jacobson v. Mailboxes Etc. U.S.A.*, 419 Mass. 572, 646 N.E.2d 741, 745–46 (1995); *Williams v. America Online, Inc.*, No. 00–0962, 2001 WL 135825, 2001 Mass.Super. LEXIS 11 (Mass.Super.Ct. Feb. 8, 2001). As evidence of pre-Agreement damages, appellant points to VIS' allegedly false and misleading advertisements for its DSL service as well as unreasonable delay in activating the service itself. He also argues that enforcement is not proper when he was compelled to financially commit himself before accepting the Agreement through the outlay of monies for hardware such as modems and Ethernet cards necessary for use of the service.

However, appellant did in fact execute this Agreement. The Virginia Supreme Court has held that forum selection clauses may be enforced even when they are entered into *after* a cause of action concerning the contract has arisen. *See Paul Business Systems, supra* note 13, 397 S.E.2d at 808. We concur. Whatever hindrances existed, including the unavailability of the class action mechanism, to appellant's assertion of his already existing claims could have been taken into account before he executed the Agreement.[14]

Furthermore, the Agreement contained a provision that gave customers thirty days after registration to cancel the service and receive a full refund. Courts have held that consumers' ability to cancel an agreement supports enforcement of a forum selection clause, even when the consumers have already financially committed themselves. *See Carnival Cruise Lines, supra* note 9, 499 U.S. at 595, 111 S.Ct. 1522; *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 203 (Tex.Ct.App.2001) ("Courts may ... consider whether ... the party retained the option of rejecting the contract with impunity following notice of the forum selection clause."); *Caspi, supra*, 732 A.2d at 531. While it is true, as appellant argues, that availability of such a refund does not "compensate [VIS'] customers for the harms done to them prior to their entry into the [Agreement], or for the time they have already invested in obtaining [VIS'] DSL service," the right to cancel the service presumably encompasses the right to negate the forum selection limitation as to those damages.

In sum, we see no error in the trial court's determination that the forum selection clause should be enforced.[15]

### III.

■ The validity of the clause, though, does not end this matter. Appellant contends that even if the clause is enforceable, it should apply only to his breach of contract claims and not his tort claim of negli-

---

14. As discussed more fully in Section III, appellant's claims involving false representations and delays in activating the DSL service are "inextricably linked" to the Agreement.

15. Appellant's argument that the forum selection clause should not be enforced because it is procedurally or substantively unconsciona-

ble, *see, e.g., Urban Invest., Inc. v. Branham*, 464 A.2d 93, 99 (D.C.1983) (per curiam), is without merit. The so-called bases of unconscionability, inadequate notice and lack of a class action mechanism, are identical to the grounds already rejected in the above discussion.

gent misrepresentation or his statutory claims under the Virginia consumer protection laws. Appellant reasons that the scope of the clause is ambiguous and that ambiguities in a contract provision should be construed against the drafter. *See, e.g., Affordable Elegance Travel, Inc. v. Worldspan, L.P.,* 774 A.2d 320, 328 (D.C.2001).

We reprint the full contractual provision containing the clause:

> 14.7 You and VIS agree that this Agreement shall be interpreted in accordance with the substantive laws of the Commonwealth of Virginia, without reference to its principles of conflicts of laws. You and VIS consent to the exclusive personal jurisdiction of and venue in a court of competent jurisdiction located in Fairfax County, Virginia. Any cause of action or claim you may have with respect to the Service must be commenced within one (1) year after the claim or cause of action arises or such claim or cause of action is barred.

The trial court agreed with appellant that the forum selection clause's reach was unclear. It noted that the choice of law provision preceding the forum selection clause dealt only with the Agreement,[16] while the limitations provision following encompassed all claims related to the Service. Noting that "the [forum selection clause] itself does not define the scope of its applicability," the trial court concluded that, based on the surrounding language, the clause could reasonably be interpreted as applying only to disputes concerning the

Agreement or as applying to all claims between the parties.

■ The parties vigorously spar over the trial court's ambiguity finding, but we need not concern ourselves with this aspect. For like the trial court, we conclude that even if the clause is ambiguous, it is still applicable to all of appellant's claims. We follow the number of courts that have held that non-contract claims that involve the same operative facts as a parallel breach of contract claim fall within the scope of a forum selection clause. *See Terra, supra,* 119 F.3d at 695; *Lambert, supra* note 9, 983 F.2d at 1121–22; *Lawler v. Schumacher Filters Am.,* 832 F.Supp. 1044, 1052 (E.D.Va.1993).[17] Courts should not "reward attempts to evade enforcement of forum selection agreements through 'artful pleading of [non-contract] claims' in the context of a contract dispute." *Lambert, supra* note 9, 983 F.2d at 1121 (citation omitted).

Appellant contends that he has not engaged in "artful pleading" but rather has asserted "causes of action that . . . address conduct that occurs pre-and extra-contractually." However, we agree with the trial court's reasoning:

> [Appellant] do[es] not deny a certain commonality of facts among the claims. For instance, [appellant's] claim, *inter alia,* that [VIS'] deceptive and misleading statements caused [him] to register for the service [is] . . . like [appellant's] breach of contract claim . . . inextricably linked to the numerous disclaimers made by [VIS] in the [Agreement]. In

---

**16.** Appellant expressly agrees, however, that Virginia law governs his tort and statutory claims as well as the contract claims.

**17.** We are not persuaded to the contrary by appellant's citations to two state lower court cases. *See Management Computer Controls, Inc. v. Charles Perry Constr., Inc.,* 743 So.2d 627, 632 (Fla.Ct.App.1999); *Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.,* 759 A.2d 926, 931–

32 (Pa.Super.2000). We find *Armco Inc. v. North Atl. Ins. Co.,* 68 F.Supp.2d 330 (S.D.N.Y.1999), also cited by appellant, to be distinguishable. While *Armco* declined to apply a forum selection clause to the plaintiffs' claims, it did so because the claims were based on allegations of wide ranging fraud that preceded the contract, including fraud in inducing the forum selection clause itself. *Id.* at 338–40.

the view of this Court, this linkage requires that all [appellant's] claims in this case be tried in Virginia. To rule otherwise would be to "evade the ... forum selection clause [and] yield the untenable result that related-and indeed parallel-claims would be litigated in different [forums]." (footnotes and citations omitted).

*See also Scott v. Bell Atl. Corp.,* 282 A.D.2d 180, 726 N.Y.S.2d 60, 63–64 (N.Y.App.Div.2001).

■■■ "[F]orum selection clauses enhance contractual and economic predictability, while conserving judicial resources and benefitting commercial entities as well as consumers." *Booker, supra,* 781 So.2d at 424–25. While they will not be held applicable when enforcement is unreasonable or the claims in question are beyond the clause's scope, no such circumstances are present here.

The judgment of the trial court is therefore

*Affirmed.*